# EXHIBIT A

SHANTA DRIVER, Bar No. P65007
MONICA SMITH, Bar No. P73439
United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
19526-B Cranbrook Drive
Detroit, MI 48221
(313) 407-4865
shanta.driver@ueaa.net, monica.smith@ueaa.net
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

KATRINA BROWN,

Plaintiff,

vs.

DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT,
MAYOR MIKE DUGGAN,
JUDGE STEVEN RHODES,
ALYCIA MERIWEATHER,
FELICIA VENABLE-AKINBODE,
MATHEW SAM, DR. SHERRELL
HOBBS, FELICIA COOK, IVAN
BRANSON, GEORGINA TAIT,
and DOES 1-5,

Defendants.

CASE NO.: 2:17-cv-12936

**COMPLAINT FOR VIOLATION OF
CIVIL RIGHTS AND DAMAGES**

- **42 U.S.C. § 1983 (First, Fourth, and Fourteenth Amendments)**
- **Michigan Constitution [free speech]**
- **Safe Drinking Water Act [retaliation, contamination]**
- **Michigan Whistleblowers' Protection Act**
- **State Civil Rights Act**
- **Michigan Public Employment Relations Act**
- **Defamation**
- **Intentional Infliction of Emotional Distress**

**DEMAND FOR JURY TRIAL**

Pursuant to the Federal Rules of Civil Procedure, Plaintiff, by and through her attorneys, UNITED FOR EQUALITY AND AFFIRMATIVE ACTION LEGAL DEFENSE FUND (UEAALDF), states as follows:

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                1

**INTRODUCTION**

1.      This Complaint is brought on behalf of Katrina BROWN ("Plaintiff"), a teacher who was retaliated against, harassed, and forced to withdraw from teaching by Defendants because she refused to allow the Detroit Public Schools Community District ("DPSCD") to poison the children she teaches.

2.      DPSCD officials are repeating the grave, catastrophic errors of the government officials of Flint, Michigan, by continuing to expose an undisclosed number of children to dangerous levels of lead and copper in their drinking water and victimizing individuals who speak the truth.

3.      DPSCD's repressive actions against BROWN, which have caused her to become ill and have forced her to withdraw from work, deprive DPSCD's children of one of their champions.

4.      After DPSCD shut off the water at BROWN's school due to dangerous and toxic levels of copper in its drinking water, the District then provided inadequate bottled water in the hot final two weeks of the Spring 2016 school term and eventually no water at all to its children and staff. Children suffered in oppressive, overcrowded classrooms without air conditioning. BROWN complained about these conditions and requested relief from the District, which did not come.

5.      Because of her role in complaining about health conditions in the school, she became elected building site representative by members of the Detroit Federation of Teachers ("DFT") at her school, and BROWN became the target of harassment and other adverse actions at the hands of DPS supervisors. At the beginning of the Fall 2016 school year, DPSCD announced that all water was now safe and drinkable, and at John R. King turned on the water again. When BROWN started to develop rashes, large numbers of

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                    2

children began to get sick, and other DFT members approached BROWN to get the water tested, BROWN contacted MIOSHA and the EPA to test the water. She discovered that DPSCD had not taken any measures to correct the chemicals in the drinking water, had not re-tested the water, and that DPSCD was exposing the children and staff to dangerous levels of copper and lead in their drinking water all throughout DPSCD.

6. Immediately and soon after, Defendant Principal Felicia COOK called an emergency meeting and reprimanded BROWN before the entire staff. DPSCD transferred BROWN to another school Ronald Brown Academy, which was on the other side of the city and which was also a school reporting dangerous levels of toxins in its water. There, the children were drinking from school faucets, and Defendant Principal Georgina TAIT threatened BROWN not to make any complaints about the conditions there.

7. Because of the stress and harassment, BROWN took a medical leave beginning in October 2016. To this day, because of the Defendants' actions, an untold number of children within DPSCD continue to be exposed to dangerous levels of chemicals in their drinking water.

8. On June 20, 2017, Michigan OSHA ("MIOSHA") found that Plaintiff was absolutely correct in her assessment of the danger of the water on her school's children. However, the school drove her out of her teaching position, inflicting severe emotional harm. To this day, the school has still not taken action to comply with MIOSHA's order to provide clean potable water to its school and staff. Without brave people like Plaintiff, MIOSHA would never have investigated the school, and the school and DPSCD will never feel like they have to comply with the order or any other legal obligations to the children of Detroit.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES 3

9. Court action is needed to make BROWN whole, to protect the children of Detroit, and to prevent illegal retaliation against teachers who protect them.

## JURISDICTION AND VENUE

10. This is a civil rights action arising from Defendants' actions against Plaintiff Katrina BROWN ("Plaintiff") beginning May 2016 in Detroit, Michigan in Wayne County. This action is brought pursuant to: 42 USC §1983; the First and Fourteenth Amendments to the United States Constitution; the Clean Water Act (CWA); the Safe Drinking Water Act (SDWA); the Michigan Constitution; the Michigan Whistleblowers' Protection Act; state common law; and related state law statutes, codes, and regulations.

11. Plaintiff resides in Southfield, Michigan. All the Defendants herein reside and/or work in Detroit, Michigan. The events, acts, and/or omissions complained of herein occurred in Wayne County, Michigan, and this action is properly assigned to the U.S. District Court of Michigan, Eastern District.

12. This Court has subject matter jurisdiction under 28 USC §1331 and 28 USC §1343(3). This Court has supplemental jurisdiction of related state claims from the same case or controversy under 28 USC §1367(a).

13. This action is timely filed within all applicable statutes of limitation.

## PARTIES

14. Plaintiff Katrina BROWN is a teacher employed by the Detroit Public Schools Community District ("DPSCD"). As a teacher at DPSCD's John R. King Academic and Performing Arts Academy ("John R. King"), she was elected building representative by John R King members of the Detroit Federation of Teachers. She brings these claims on her own behalf and as a Private Attorney General to vindicate constitutional rights of the highest importance.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES          4

15. Defendant Detroit Public Schools Community District ("DPSCD"), is a public entity and an educational service agency established and maintained by the laws and constitution of the State of Michigan, and owns, operates, manages, directs, and employs and/or is responsible for other Defendants in this action. Defendant DPSCD is vicariously liable for state law torts of its employees and agents committed within the scope of their employment.

16. Defendant Mayor Mike DUGGAN was at all material times the mayor of the City of Detroit and acting within the course and scope of that employment. Defendant DUGGAN is sued in his individual and official capacities.

17. Defendant Judge Steven RHODES was at all material times the emergency manager of DPSCD and acting within the course and scope of that employment. Defendant RHODES is sued in his individual and official capacities.

18. Defendant Alycia MERIWEATHER was at all material times the Superintendent of DPSCD and acting within the course and scope of that employment. Defendant MERIWEATHER is sued in her individual and official capacities.

19. Defendant Felicia VENABLE-AKINBODE was at all material times Executive Director of the DPSCD's Department of Environmental Health and Safety and acting within the course and scope of that employment. Defendant VENABLE-AKINBODE is sued in her individual and official capacities.

20. Defendant Mathew SAM was at all material times Director of the Air/Water Quality Management division of DPSCD's Department of Environmental Health and Safety and acting within the course and scope of that employment. Defendant SAM is sued in his individual and official capacities.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                    5

21. Defendant Dr. Sherrell HOBBS was at all material times assistant superintendent for DPSCD's Network 2, which includes John R. King Academic and Performing Arts Academy ("John R. King"), and acting within the course and scope of that employment. Defendant Dr. HOBBS is sued in her individual and official capacities.

22. Defendant Felicia COOK was at all material times Principal at DPSCD's John R. King Academic and Performing Arts Academy ("John R. King"), and acting within the course and scope of that employment. Defendant COOK is sued in her individual and official capacities.

23. Defendant Ivan BRANSON was at all material times an Assistant Principal at DPSCD's John R. King Academic and Performing Arts Academy ("John R. King"), and acting within the course and scope of that employment. Defendant BRANSON is sued in his individual and official capacities.

24. Defendant Georgina TAIT was at all material times Principal at DPSCD's Ronald Brown Academy, and acting within the course and scope of that employment. Defendant TAIT is sued in her individual and official capacities.

25. The true names and capacities of Defendants sued herein as DOES 1-5 ("DOE Defendants") are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to show these Defendants' true names and capacities when they are ascertained. At all material times, each of the DOE Defendants was an employee and/or agent of Defendant DPSCD, and at all material times acted within the course and scope of that relationship. Plaintiff is informed and believes, and thereon alleges, that each Defendant so named was negligently, wrongfully, or otherwise responsible in some manner for the damages sustained by Plaintiff as set forth herein. Further, one or more DOE Defendants was at all

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

6

material times responsible for the supervision and discipline of other Defendants, including DOE Defendants.

26. Plaintiff is informed and believes and thereon alleges that each of the Defendants sued herein was negligently, intentionally, recklessly, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused damages to Plaintiff.

27. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was at all material times, an agent, servant, employee, partner, joint venture, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.

28. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to other Defendants, and ratified and/or authorized the acts or omissions as alleged herein, except as may be hereafter otherwise specifically alleged. At all material times, each Defendant was both jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's constitutional and statutory rights and other harm.

29. At all material times, each Defendant acted under color of the laws, statutes, ordinances, policies, practices, customs, and usages of the State of Michigan and the DPSCD.

30. Plaintiff is informed and believes, and thereon alleges, that at all material times, Defendants, and each of them, were and are persons and entities whose conduct is governed and regulated by all Michigan laws and statutes, including the common law, the Michigan Constitution, and the public policy of the State of Michigan.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                    7

31. Plaintiff is informed and believes, and thereon alleges, that the unlawful actions complained of herein, as a result of which Plaintiff sustained the damages enumerated below, were and are violations of the laws of the State of Michigan and the United States.

32. This action is timely filed within all applicable statutes of limitation.

**ALLEGATIONS**

33. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

34. Plaintiff Katrina BROWN is a veteran teacher with twenty years of experience who has received accolades for her teaching and commitment to her students.

35. BROWN started teaching at DPSCD's John R. King Academic and Performing Arts Academy ("John R. King") in Fall 2013. From Fall 2013 through 2015 time, she had received stellar evaluations of her teaching, and was given DPSCD's highest rating, "highly effective," for four years.

36. On April 14, 2016, John R. King was among 19 schools within DPSCD that shut off its water because tests showed that it had dangerous levels of lead and/or copper in its drinking water. John R. King had elevated levels of copper:

37. Plaintiff and the children and staff at John R. King had been drinking the drinking water at that school, and been exposed to those toxins.

38. Scientific studies show that copper and lead contamination in drinking water can cause permanent brain damage, kidney problems, and retardation of physical growth, and is toxic to every organ in the human body. Children are particularly vulnerable to its effects.

39. John R. King is a K-8 school, with students ranging from five to fourteen years of age. In the spring of 2016, BROWN was teaching sixth graders.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES    8

40. When DPSCD shut off the water faucets at John R. King, it began to provide one 4-ounce (half-cup) bottle of water to each child per day, far below the amount of water needed to prevent thirst and maintain good health.

41. Starting in April 2016, BROWN complained to Defendant Principal COOK and her immediate superior Defendant Dr. Sherrell HOBBS that the school's actions providing drinking water for the children were insufficient.

42. Administrators at John R. King, including Defendant Principal Felicia COOK and Defendant Assistant Principal Ivan Branson, forbade children from bringing bottles of water to the school.

43. In BROWN's classroom, her children continually and repeatedly begged for water. The school's and the district's actions forced BROWN and other staff to take action for the welfare of their children. So BROWN and other staff at DPSCD started to bring bottles of water for the children. They appealed to unions and the community to help with this task.

44. Starting in late May 2016, DPSCD stopped providing bottles of water to John R. King altogether. This coincided with the onset of summer-like weather in Detroit. BROWN's classroom was in the half of the John R. King building that had no functioning air conditioning. Additionally, because one of the sixth teachers at John R. King left for health reasons in spring 2016, her students were transferred to BROWN's classroom. This left BROWN to have to teach about sixty children, in blatant violation of DPSCD's contract with the Detroit Federation of Teachers. In late May 2016, Detroit frequently had temperatures in the 90s. In BROWN's classroom, the temperature was 15 to 20 degrees warmer. In these overcrowded, hot conditions without any drinking water,

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES 9

children at BROWN's school became ill and some passed out in class. Children, desperate for water, tried to drink out of bathroom spouts.

45. One of BROWN's students, a seventh grader named T.C., wrote a letter to DPSCD: "Ex[c]use me we really need water we've been asking Mr. Branson [vice principal] and he says no we haven't had water for days since Mr. Branson took it and I caught him drinking some. I ask yo[u] to giv[e] us water becuz its summer time and we're deh[y]drated every day after gym we can't go to the water fount[a]in we can't get any water becuz he refu[se]. But he drink water if we bring water he takes it. I'm asking you to remove him. If we got no water why should we have a school. Like Mrs. Brown is a good teacher she bring water, food, we are thankful to have her she is the best. I can't do my work without water. I can't concentra[te]. It's making me be bad and not listen. I fall asleep in class cuz we get no water. When I go to the... bathroom my pee is dark yellow and dry. We really need water my jaws start to hurt we need water. Mr. Branson and Mrs. Cook [the principal] refuse to fix the water fountain or give us water. They drink water in [our] face and they use to give us little ha[lf] cups of water and stop and told the people to stop bringing it."

46. On May 23, 2016, BROWN complained to Defendant Principal COOK that the children needed bottled water. She also requested mechanical fans that she could take to her classroom. BROWN replied that the District would not provide water and would not provide fans. BROWN repeated this request on May 23, 24, 25, 26, and 27. BROWN made her request for water to Defendant COOK in writing on May 26, 2016.

47. On May 26, 2016, Plaintiff BROWN and Ms. Booker, another teacher who was a member of the DFT Executive Board, met with Principal COOK and complained about the conditions in the school. They informed COOK that the children were dehydrated and

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES          10

passing out, and that the school needed to provide bottled water and fans. Defendant Assistant Principal BRANSON also witnessed this meeting. BROWN believed she had reached an agreement from Defendants to take action to improve the conditions.

48. Later that same day, about three hours later, BROWN received a call from Defendant Principal COOK informing her that COOK was looking for a new school for BROWN to teach at and to be ready to teach at a new school on Monday.

49. In every previous year, BROWN had received evaluations giving her the highest rating of "highly effective" for her teaching, with scores ranging between 93 and 99 percent. However, on May 27, 2016, COOK gave BROWN a subpar rating of 78.2 percent, which is considered "minimally effective." In DPSCD, two consecutive years of a "minimally effective" rating prevents a teacher from being assigned additional students, and three consecutive years leads to termination.

50. In violation of DPSCD policy and inconsistent with her own practice in the 2014-15 school year, COOK did not provide periodic evaluations and/or feedback to BROWN for her teaching in 2015-16. The May 27, 2016 evaluation was the first "feedback" she gave to BROWN. COOK had not conducted any classroom observations. Nor had she considered any of the materials BROWN had provided her that were pertinent to her evaluation.

51. COOK's decision to transfer BROWN and give her a poor evaluation were retaliation for BROWN's activities advocating for the health and rights of her children, herself, and her fellow staff, in violation of the First Amendment, the state whistleblowers' act, state and federal health acts, the DFT contract, and Plaintiff's union rights.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES     11

52. On May 31, 2016, BROWN filed a whistleblower report with the Michigan Office of Safety and Health Administration (MIOSHA).

53. BROWN continued requesting bottled water from Defendant COOK. On June 7, 2016, BROWN sent an email to Defendant Dr. Sherrell HOBBS, immediate superior to Defendant COOK, stating her concerns for the children and stating that they were not being addressed by her school's administrators.

54. Within an hour after sending this email, Defendant Assistant Principal Ivan BRANSON emailed BROWN stating "Your [sic] FIRED" and made false accusations about selling food to her students.

55. After BROWN made repeated attempts to contact Defendant Dr. HOBBS, HOBBS told BROWN to raise her concerns with the administrators at her school, even though her complaints were about those same administrators and even though HOBBS was their immediate supervisor. Throughout the relevant times of this Complaint, BROWN gave HOBBS notice of the retaliatory actions of Defendants Principal COOK and other administrators at John R. King.

56. Fortunately, Defendants did not actually carry out their threats to transfer and fire BROWN in Spring 2016. BROWN continued to teach at John R. King during the Summer 2016 term.

57. The water remained shut off at John R. King despite the hot summer weather. During the summer, BROWN continued to speak out for students and staff at John R. King, asking the District to provide safe drinking water and to provide testing of students and staff for lead and copper poisoning.

58. On June 22, 2016, protesters picketed outside John R. King demanding that DPSCD provide safe drinking water and provide testing for students and staff to detect

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES         12

poisoning. An individual named Mr. Shazor entered District property and BROWN's classroom while she was teaching a lesson, shoved a flyer in her face and yelled at her in a threatening and intimidating manner. Mr. Shazor said that he had received the flyer from Defendant COOK. He made false accusations about BROWN, stating he would "report her" to the "district attorney." BROWN was so scared for her safety and her students' safety that she locked the door and moved her students to a different classroom that day.

59.    BROWN quit teaching summer school at the recommendation of her doctor, who said that her blood pressure had reached dangerous levels because of this harassment.

60.    On June 28, 2016, BROWN sent a written appeal of her "minimally effective" evaluation to Defendant HOBBS. HOBBS did not respond to her appeal, in violation of District procedure and BROWN's due process rights.

61.    In late August 2016, various Defendants turned on the water at John R. King and other DPSCD schools, accompanied by a public relations campaign saying that nearly all of DPSCD were now "in compliance" with safety standards.

62.    On August 29, 2016, Defendant Mike DUGGAN issued a press release titled "Detroit Public Schools corrects health and safety violations in its buildings, 92% of Detroit Public School buildings are now up to city code." It stated that nearly all of DPSCD's schools, including John R. King, were "in full compliance with city health and safety codes." DUGGAN claimed that "[d]uring the summer, water at all DPS schools was tested for the presence of lead." The press release did not claim that any actions had been taken to test or lower the presence of copper in drinking water. DUGGAN's office publicized "certificates of compliance" for John R. King and 86 other DPSCD schools.

---

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES          13

63. At John R. King, white water fixtures had been replaced by silver fixtures. At a back-to-school staff meeting at the end of August 2016, the District administration announced that the water was turned back on because it was now safe to drink.

64. BROWN assumed her position as building site representative for the DFT. She had run unopposed for this position in Spring 2016.

65. On August 31, 2016, Defendant Assistant Principal BRANSON, under the direction of Defendant Principal COOK, summoned BROWN to a meeting. Also present at this meeting were three of BROWN's co-workers, including DFT Executive Board member Ms. Booker. BRANSON said that he had canvassed teachers and demanded to know whether they voted for BROWN. Even though BROWN had run unopposed for the position, BRANSON demanded that BROWN and the DFT provide "proof" that BROWN was elected their building representative. He told BROWN to ask the DFT to produce to BRANSON the nomination forms and the ballots. This was illegal interference in a union election and intimidation and harassment of BROWN.

66. Classroom instruction began on September 6, 2016. BROWN was assigned by Defendant COOK to teach fourth graders. In her nearly twenty years of teaching, BROWN had never taught elementary students before. COOK had transferred BROWN out of her previous position teaching science to middle-school age children, even though the school had a shortage of people to teach science. COOK transferred BROWN in retaliation for her First Amendment, union, and whistleblower activities.

67. On September 13, 2016, Defendant COOK sent Defendant BRANSON to BROWN's classroom to get BROWN to sign an acknowledgment that she had read a new "Agreement of Work Rules 2016-2017." BRANSON arrived when BROWN was in the middle of teaching a lesson. BRANSON deceived BROWN into signing the paper,

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES     14

saying "you don't have to read it" and asked BROWN to back-date the form to August 29, 2016. BROWN did so. Defendants would use this fraudulently-obtained signature later against BROWN.

68. From the beginning of the school year, the children at John R. King reported feeling sick. Teachers were skeptical about the District's decision to turn on the water and asked BROWN to investigate. On September 15 and 16, 2016, BROWN contacted the Detroit Health Department to inquire as to whether the District was in compliance and to get independent testing of the school's drinking water.

69. Subsequent to August 31, 2016, COOK sent a formal reprimand to BROWN, claiming that her conduct during the August 31, 2016 meeting with BRANSON – in which the administration was harassing BROWN, illegally challenging her authority as the school staff's building representative, and interfering with a union election – was in violation of the "Agreement of Work Rules 2016-2017" that she signed after that meeting on September 13, 2016. Aside from the falsity of COOK's allegations, such Rules had not been promulgated by August 31, 2016.

70. The independent agencies that BROWN contacted informed her that DPSCD should never have turned the water on again at John R. King and at other DPSCD schools because they had not yet taken appropriate steps to ensure children's safety.

71. At the start of the 2016-17 school year, DPSCD, under the direction of Defendants Mayor DUGGAN, Judge RHODES, and Superintendent MERRIWEATHER, Executive Director of the DPSCD's Department of Environmental Health and Safety Defendant Felicia VENABLE-AKINBODE, and Director of the Air/Water Quality Management division of Department of Environmental Health and Safety Defendant Mathew SAM, had failed to remedy the contamination of DPSCD water and yet

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES          15

deliberately misinformed the public and endangered the health and mental and physical development of thousands of children in order to convince more parents to enroll their children in DPSCD.

72. On September 19, 2016, in response to BROWN's initiative and investigating, DPSCD issued a public statement announcing that at many schools "the water will remain [sic] off." This list of schools included John R. King. At John R. King and at other schools, after the District had turned on the water where the drinking water was still dangerous for two weeks, the District shut off the water.

73. For two weeks, the children and staff at John R. King had been drinking water with dangerous amounts of copper. Some children at John R. King had unusual difficulty concentrating. BROWN developed rashes on her body. BROWN's new fourth-grade classroom, to which she was newly assigned, was located next to the faucet at John R. King that reported the highest levels of copper. She and her nine-year-old children had been drinking copper-laden water for two weeks. The District had simply changed the white fixtures with new silver fixtures, claimed that it had fixed the problem. The District lied to BROWN, other staff, and children and exposed them to dangerous chemicals to enhance its public relations.

74. On September 19, 2016, COOK convened all staff at John R. King for an emergency meeting to discuss "proper protocol of communication." In front of all staff, COOK castigated BROWN for reporting the District's and the school's actions endangering the children's health and their violations of safety laws, disingenuously claiming that COOK would have addressed the problems had BROWN raised them with her first.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES 16

75. On September 20, 2016, BROWN reported DPSCD's illegal exposure of children to copper and lead to the Michigan Occupational Safety and Health Administration (MIOSHA) and the Environmental Protection Agency (EPA). She also sent this notification to DPSCD officials, including Defendants DPSCD Superintendent Alycia MERRIWEATHER, DPSCD Executive Director of the DPSCD's Department of Environmental Health and Safety Felicia VENABLE-AKINBODE, and Principal COOK.

76. On September 22, 2016, the District informed BROWN of an immediate involuntary transfer to Ronald Brown Academy. This was in retaliation for BROWN's First Amendment, union, and whistleblower activities. Further, it violated the right of DFT members at John R. King to elect their own building representative. It sought to sunder BROWN's close relationships with her children and coworkers with whom and for whom she had fought for months.

77. BROWN's new school, Ronald Brown Academy, was another school that had reported having dangerous levels of lead in its drinking water in early 2016. It also was located on the other side of the city, which forced BROWN to commute an extra hour each way to and from work.

78. On BROWN's first day, the principal of Ronald Brown Academy, Defendant Georgina TAIT, confronted BROWN. She spoke in a hostile manner and said that she was a "strong disciplinarian." She warned BROWN that "we don't do grievances here." TAIT violated BROWN's right to engage in concerted activity under applicable labor laws. BROWN was transferred to a school under this self-proclaimed "disciplinarian" to intimidate BROWN from continuing her activities to protect Detroit's schoolchildren.

79. When BROWN visited a doctor later in September and requested a blood test, the doctor reported that she had elevated and dangerous levels of copper in her blood.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                    17

80. The actions of Defendants caused BROWN severe and emotional distress. In October 2016, she took a medical leave and remained on leave until July 2017.

81. DPSCD continues to refuse, despite BROWN's requests, to provide free blood testing of DPSCD children to test for levels of lead and copper.

82. On June 20, 2017, the Michigan Occupational Safety and Health Administration (MIOSHA) cited John R. King for failing to provide safe drinking water and for delivering non-potable water to drinking fountains during portions of 2016. It fined John R. King $4,000 and ordered it to correct it violations immediately.

83. MIOSHA never would have been notified of John R. King's violations, but for BROWN's decision to file complaints to MIOSHA and OSHA regarding the lack of safe drinking water and the Defendants' retaliation against her for reporting the school's and District's violations.

84. On information and belief, Defendants targeted Plaintiff BROWN for her lawful exercise of her right to freedom of speech, her right to engage in the enforcement of laws to protect the public and her own schoolchildren from contaminated drinking water, and her right to engage in union concerted activity.

85. On information and belief, Defendant DPSCD, its policymakers and managing agents and employees including, but not limited to, Defendants Judge Steven RHODES, Alicia MERIWEATHER, Felicia VENABLE-AKINBODE, Mathew SAM, Dr. Sherrell HOBBS, and Felicia COOK, and other as-yet unknown employees and agents of Defendants DPSCD, negligently, recklessly, otherwise wrongfully and with deliberate indifference to the rights of DPSCD teachers and staff including Plaintiff BROWN, failed to properly screen, investigate, hire, train, supervise, and/or discipline Defendants Alycia MERIWEATHER, Felicia VENABLE-AKINBODE, Mathew SAM, Dr. Sherrell

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES          18

HOBBS, and Felicia COOK, Ivan BRANSON, and Georgina TAIT leading to Plaintiff's injuries.

86. Defendants' actions and omissions were done under color of law and within the course and scope of their employment, and were done pursuant to unconstitutional customs, policies, and procedures of Defendants DPSCD.

87. Defendant DPSCD is also responsible for Plaintiff BROWN's injuries through its own acts and omissions, negligent or otherwise, by failing to properly and adequately investigate, train, supervise, monitor, instruct, and discipline their employees, officers, and other personnel, including the officers identified herein.

88. At all material times, and alternatively, the actions and omissions of each Defendant were intentional, knowing, wanton and/or willful, reckless, malicious, deliberately indifferent to and with conscious disregard for the rights of Plaintiff and others, done with oppression, fraud, malice, actual malice, grossly negligent, negligent, and objectively unreasonable.

89. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff sustained the following damages, past and future, among others:

    a.    Loss of pay;

    b.    Loss of reputation;

    c.    Emotional pain and suffering, including severe emotional distress and loss of connections with coworkers and children at John R. King;

    d.    Violation of federal and Michigan constitutional rights;

    e.    Physical pain and suffering, mental anguish, fright and shock, disability, medical expenses, wage loss, cognitive deficits, lost earning capacity, and

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES    19

aggravation of pre-existing conditions due to exposure to copper-contaminated water; and

f.     All compensatory and punitive damages, attorneys' fees, costs, and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, and as otherwise allowed under Michigan and United States statutes, codes, and common law.

**COUNT ONE: Violation of Freedom of Speech and Association (First Amendment to U.S. Constitution; Article I, Section 5 of Michigan Constitution, 42 U.S.C. § 1983) <u>AGAINST DEFENDANTS RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, BRANSON, TAIT, and DOES 1-5</u>**

90.     Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

91.     The First and Fourteenth Amendments to the United States Constitution protect the rights of freedom of speech and freedom of association. The Michigan Constitution states that "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right."

92.     In the United States, "it can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 506 (1969). The First Amendment guarantees that teachers may speak on "issues of public importance," including when such speech criticizes the school district administration: *Pickering v. Board of Education,* 391 U.S. 563, 574 (1968).

93.     The adverse actions taken against BROWN were in retaliation for her speech activities advocating for the safety and health of children and staff at her school and throughout DPSCD schools.

---

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES          20

94.     As a direct and proximate result of the acts and/or omissions of Defendants RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, BRANSON, TAIT, and DOES 1-5 as set forth above, including taking adverse action against Plaintiff BROWN in retaliation for her protected speech activities, Plaintiff BROWN sustained damages as set forth at ¶ 89 above.

95.     Defendants DUGGAN, RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, BRANSON, TAIT, and DOES 1-5 subjected Plaintiff BROWN to their wrongful conduct and deprived her of rights described herein knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff BROWN and others would be violated by their acts and/or omissions.

96.     The conduct of Defendants RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, BRANSON, TAIT, and DOES 1-5 entitles Plaintiff BROWN to exemplary and punitive damages and penalties allowable under 42 U.S.C. § 1983 and Michigan law.

97.     Plaintiff BROWN is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable Michigan codes and law.

**COUNT TWO: Retaliation in Violation of the Safe Drinking Water Act AGAINST DEFENDANTS DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT (DPSCD), RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, BRANSON, TAIT, and DOES 1-5**

98.     Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

99.     The Safe Drinking Water Act (SDWA) requires state entities to monitor drinking water for contaminants and to take action whenever contaminants surpass the thresholds

permitted of the SDWA. The Occupational Safety and Health Administration (OSHA) is authorized to enforce the SDWA's anti-retaliation provisions in regard to employees.

100. The SDWA protects individuals who report contaminants and violations of the SDWA from retaliation: "Discrimination prohibition... (1) No employer may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee... commenced... or is about to commence... a proceeding under this subchapter or a proceeding for the administration or enforcement of drinking water regulations." 42 U.S.C. §300j-9(i).

101. As described above, BROWN made complaints to OSHA about Defendants' lack of action toward the high levels of copper at John R. King, their failure to provide adequate drinking water to children and staff when the water was turned off by Defendants, and their intentional exposure of children and staff at the school to copper contaminants without first removing them. In Spring 2016 and Fall 2016, Defendants took adverse employment actions against BROWN subsequent to and in retaliation for her complaints to OSHA.

102. On June 20, 2017, Michigan Occupational Safety and Health Administration (MIOSHA) issued a citation to John R. King for failing to provide safe drinking water. It stated: "Employees were not provided portable water in the school for washing of the person, washing of foods, washing of cooking or eating utensils, washing of food preparation or processing premises, or in personal service rooms. Non-potable water was delivered in drinking fountains during portions of 2016. Laboratory test results of samples taken in March and April of 2016 showed that water supplied at John R. King Academic & Performing Arts Academy contained high levels of copper." Further,

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                    22

MIOSHA proposed a penalty of $4,000, and required that the school take action to correct its violation by July 24, 2017.

103. At the time of this filing, Defendants have taken no action to remedy the violation.

104. As a direct and proximate result of the acts and/or omissions of Defendants DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT (DPSCD), RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, BRANSON, TAIT, and DOES 1-5 as set forth above, Plaintiff BROWN sustained damages as set forth at ¶ 89 above.

105. Plaintiff BROWN is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 300j-9(i) and other applicable codes and law.

**COUNT THREE: Violations of the Michigan Public Employment Relations Act (PERA)**
**AGAINST DEFENDANTS DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT (DPSCD), RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, BRANSON, TAIT, and DOES 1-5**

106. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

107. The Michigan Public Employment Relations Act (PERA) grants public employees the right to "engage in lawful concerted activities" for "mutual aid and protection". MCL 423.209. Additionally, the PERA prohibits public employers from "interfer[ing]" with this right. MCL 423.210.

108. Defendants' actions as described above, including but not limited to harassment and intimidation, not recognizing BROWN as her co-workers' site representative, interfering with a union election, involuntarily transferring her out of John R. King, and

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                    23

fostering a hostile work environment, were retaliation against Plaintiff for her lawful concerted activities exposing, seeking action to remedy, and protecting children and staff from the contaminated water at John R. King.

109. Defendants' actions as described above fostered a hostile work environment leading to the constructive termination of Plaintiff from her employment at DPSCD.

110. As a direct and proximate result of the acts and/or omissions of Defendants DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT (DPSCD), RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, BRANSON, TAIT, and DOES 1-5 as set forth above, Plaintiff BROWN sustained damages as set forth at ¶ 89 above.

**COUNT FOUR: Violation of Michigan Whistleblowers' Protection Act**
**AGAINST DEFENDANTS DETROIT PUBLIC SCHOOLS COMMUNITY**
**DISTRICT (DPSCD), RHODES, MERIWEATHER, VENABLE-AKINBODE,**
**SAM, HOBBS, COOK, BRANSON, TAIT, and DOES 1-5**

111. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

112. The Michigan Whistleblowers' Protection Act states: "An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule... to a public body." MCL 15.362.

113. As a direct and proximate result of the acts and/or omissions of Defendants DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT (DPSCD), RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, BRANSON,

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES     24

TAIT, and DOES 1-5 as set forth above, including harassment and intimidation, not recognizing BROWN as her co-workers' site representative, interfering with a union election, and involuntarily transferring her out of John R. King due to her lawful concerted activities, and fostering a hostile work environment that resulted in her constructive termination, Plaintiff BROWN sustained damages as set forth at ¶ 89 above.

114. Plaintiff BROWN is also entitled to reasonable costs and attorneys' fees under MCL 15.364 and other applicable Michigan codes and law.

**COUNT FIVE: Substantive Due Process – Bodily Integrity**
**AGAINST DEFENDANTS DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT (DPSCD), DUGGAN, RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, and DOES 1-5**

115. Plaintiff realleges each and every paragraph of this Complaint as if fully set forth here.

116. Plaintiff has a clearly established right to bodily integrity under the Fourteenth Amendment.

117. In providing Plaintiff with contaminated water in August and September 2016 and/or causing her to consume that water, Defendants DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT (DPSCD), DUGGAN, RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, BRANSON, and DOES 1-5 violated Plaintiff's right to bodily integrity and exposed her to a foreseeable risk of harm. Plaintiff's examination in September 2016 showed elevated and dangerous levels of copper in her blood. Plaintiff suffered bodily harm and her right to bodily integrity was violated.

118. Defendants' actions were malicious, reckless, and/or made with deliberate indifference to Plaintiff's constitutional rights. Defendants engaged in these acts

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                25

willfully, maliciously, in bad faith, and/or in reckless disregard for Plaintiff's constitutional rights.

119. As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiff BROWN sustained damages as set forth at ¶ 89 above.

## COUNT SIX: Intentional Infliction of Emotional Distress
## AGAINST DUGGAN, RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, BRANSON, TAIT, and DOES 1-5

120. Plaintiff realleges each and every paragraph of this Complaint as if fully set forth here.

121. The acts and/or omissions of Defendants DUGGAN, RHODES, MERIWEATHER, VENABLE-AKINBODE, SAM, HOBBS, COOK, BRANSON, TAIT, and DOES 1-5 as described above, including but not limited to harassment, taunting, retaliatory employment actions, subjecting her to inappropriate teaching positions and placing her near the school's most contaminated drinking fountain, and threats, were intentional and/or reckless and made with conscious disregard for Plaintiff's rights, caused severe distress, and were outrageous.

122. Plaintiff suffered severe emotional distress, including, but not limited to, substantial and long-lasting suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, mortification, embarrassment, depression, and shame.

123. Defendants' conduct was the proximate cause of Plaintiff's injuries.

124. As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiff sustained damages, and is entitled to relief as set forth at ¶ 89 above.

125. Plaintiff is also entitled to reasonable costs and attorneys' fees under applicable Michigan codes and law.

## COUNT SEVEN: DEFAMATION

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                26

**AGAINST DEFENDANT COOK**

126. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

127. As set forth above, after Plaintiff engaged in lawful, concerted activities to provide adequate safe drinking water for the children at John R. King, Defendant COOK gave Plaintiff an end-of-year evaluation of "minimally effective." This rating was unreasonable, departed from previous ratings without any basis, and was in retaliation for Plaintiff's lawful concerted activities.

128. These statements were done with knowledge that they were false and/or with reckless disregard to their truthfulness.

129. In DPSCD, two consecutive years of a "minimally effective" rating prevents a teacher from being assigned additional students, and three consecutive years leads to termination. Further, the rating compromises Plaintiff's ability to be employed as a teacher anywhere.

130. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained damages and is entitled to relief as set forth at ¶ 89 above.

131. Plaintiff is also entitled to reasonable costs and attorneys' fees under applicable Michigan codes and law.

**JURY DEMAND**

132. Plaintiff hereby demands a jury trial in this action.

**PRAYER**

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

    1. Compensatory and exemplary damages in an amount according to proof

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES     27

and which is fair, just, and reasonable;

2.  Punitive damages under 42 U.S.C. § 1983 and Michigan law in an amount according to proof and which is fair, just, and reasonable;

3.  All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; 42 U.S.C. § 300j-9(i); MCL 15.364 and as otherwise may be allowed by Michigan and/or federal law;

4.  Injunctive relief, including but not limited to the following:

    - an order requiring Defendants to make a public posting clarifying the rights of employees in DPSCD;

5.  Such other and further relief as supported by the evidence in his case and as this Court and/or the jury may deem appropriate.

By Plaintiff's Attorneys,
UNITED FOR EQUALITY AND AFFIRMATIVE
ACTION LEGAL DEFENSE FUND (UEAALDF)

BY:    /s/ Monica Smith
19526-B Cranbrook Drive
Detroit, MI 48221
(313) 585-3637
Dated: September 7, 2017