# EXHIBIT D

2004 WL 435379
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

Daniel **SEYFRIED**, Plaintiff-
Appellant/Cross-Appellee,

v.

UAW **LOCAL 1292**, William Phelps and Brian
Kosbar, Defendants-Appellees/Cross-Appellants.

No. 242556.
|
March 9, 2004.

Before: DONOFRIO, P.J., and GRIFFIN and JANSEN,
JJ.

[UNPUBLISHED]

PER CURIAM.

**\*1** Plaintiff appeals as of right from a trial court
order granting defendant William Phelps' motion for
judgment notwithstanding the verdict (JNOV). Plaintiff
also appeals the trial court's judgment in favor of
defendants UAW Local 1292 (Local 1292), Phelps, and
Brian Kosbar with regard to plaintiff's civil stalking claim
and judgment in favor of defendants Local 1292 and
Kosbar on plaintiff's intentional infliction of emotional
distress claim. Defendants filed a cross-appeal from
various trial court orders. We affirm.

Plaintiff worked for General Motors and was a
member of Local 1292. In 1996 the UAW International
(International) appointed plaintiff as a document 46 joint
activities representative (JAR) for Local 1292. Kosbar was
president of Local 1292 and Phelps was chairman of the
shop committee during all pertinent time periods.

Plaintiff testified that he began having problems at work
around October or November 1996 when Phelps and
Kosbar came into his office agitated and angry claiming
that he was "bad mouthing" the contract Local 1292

had negotiated. Plaintiff claims that he was harassed
and intimidated on various occasions from this incident
until May 1998 when he left for sick leave and did
not return. [1] On three occasions Phelps requested that
plaintiff be removed from his document 46 position by
UAW International. In October 1997, plaintiff got a
personal protection order (PPO) against Phelps, which
was later modified so Phelps could properly do the
legitimate duties of his job. On May 22, 1998, plaintiff
went on sick leave and did not return to work, which he
claims was because of emotional problems he incurred as a
result of the harassment he received from Phelps. Pursuant
to Phelps' third request [2] to remove plaintiff from his
document 46 position, an investigation was scheduled,
plaintiff did not show up for his investigation, and the
International vice president removed plaintiff from his
document 46 position.

Plaintiff's first issue on appeal is that the trial court clearly
erred in granting defendant Phelps' JNOV motion when
there was sufficient evidence of extreme and outrageous
conduct to support the intentional infliction of emotional
distress claim. We disagree.

A trial court's decision on a motion for JNOV is reviewed
de novo. *Sniecinski v. BCBSM*, 469 Mich. 124, 131; 666
NW2d 186 (2003). In reviewing the decision, this Court
must view the evidence and all legitimate inferences from
it in the light most favorable to the nonmoving party. *Id.*
If reasonable jurors could have honestly reached different
conclusions, the jury verdict must stand. *Central Cartage
Co v. Fewless*, 232 Mich.App 517, 524; 591 NW2d 422
(1998). Only if the evidence failed to establish a claim as a
matter of law was JNOV appropriate. *Sniecinski, supra.*

Judgment notwithstanding the verdict should be granted
only when there was insufficient evidence presented to
create an issue for the jury. *Pontiac School Dist v Miller
Canfield Paddock & Stone*, 221 Mich.App 602, 612; 563
NW2d 693 (1997). When deciding a motion for JNOV,
the trial court must view the evidence and all reasonable
inferences in the light most favorable to the nonmoving
party and determine whether the facts presented preclude
judgment for the nonmoving party as a matter of law.
*Id.* If the evidence is such that reasonable people could
differ, the question is for the jury and JNOV is improper.
*Id.* In ruling on the motion, the trial court must give
a concise statement of its reasons in writing or on
the record. MCR 2.610(B)(3), *Badalamenti v William*

*Beaumont Hospital-Troy,* 237 Mich.App 278, 283; 602 NW2d 854 (1999). The jury found that Phelps' conduct was extreme and outrageous, that he intended to cause plaintiff severe emotional distress or recklessly caused plaintiff severe emotional distress, that plaintiff did suffer severe emotional distress as a result of Phelps' extreme conduct, and awarded damages. Reviewing the evidence and all legitimate inferences in a light most favorable to plaintiff, we find that the trial court properly granted JNOV with regard to the claim of intentional infliction of emotional distress against Phelps.

**\*2** A claim of intentional infliction of emotion distress [3] requires proof of: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Teadt v Lutheran Church Missouri Synod,* 237 Mich.App 567, 582; 603 NW2d 816 (1999). The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

The question in the present case is whether Phelps' alleged conduct was extreme and outrageous to support a claim for intentional infliction of emotional distress. There appears to be no dispute surrounding the other elements of plaintiff's intentional infliction of emotional distress claim. As explained in *Graham v. Ford,* 237 Mich.App 670, 674; 604 NW2d 713 (1999):

Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Doe v. Mills,* 212 Mich.App 73, 91; 536 NW2d 824 (1995). Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id.* It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. *Roberts v. Auto-Owners Ins Co,* 422 Mich. 594, 602-603; 374 NW2d 905 (1985), quoting Restatement of Torts, 2d, § 46, comment d, pp 72-73. In reviewing a claim of intentional infliction of emotional distress, we must determine whether the defendant's conduct is sufficiently unreasonable as to be

regarded as extreme and outrageous. *Doe, supra.* The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to claim, 'Outrageous!'" *Roberts, supra* 603.

Initially, as a matter of law, the court must determine if a defendant's conduct could be reasonably regarded as extreme and outrageous to permit recovery. *Teadt, supra* at 582. If reasonable minds could differ, then a jury must determine if the conduct was extreme according to the particular facts of the case. *Id.*

The trial court denied defendant Phelps' motion for summary disposition and for directed verdict on plaintiff's intentional infliction of emotional distress claim. In ruling on the directed verdict motion the trial court indicated that it was a "close question" and that plaintiff had an "uphill battle," but there was evidence by which a reasonable jury could come to a conclusion that Phelps' conduct was "outrageous in character and extreme in degree, and beyond the bounds of decency," and, thus, ought be left to the jury. The jury found in favor of plaintiff on this intentional infliction of emotional distress claim against Phelps, and the trial court, then, entered JNOV. In granting Phelps' JNOV motion the trial court indicated that viewing the evidence in the light most favorable to plaintiff and taking the evidence all together, it did not rise to the requisite level of outrageous behavior necessary to support a claim of intentional infliction of emotional distress.

**\*3** Here, considering the evidence in plaintiff's favor, Phelps became quite hostile to plaintiff and approached him on repeated occasions in an aggressive manner. Viewing the evidence of Phelps' behavior alone, in a light most favorable to plaintiff, from October or November 1996 to May 22, 1998, the following occurred: (1) Phelps came into plaintiff's office upset, pounding his fist, and knocking over plants and papers because he heard plaintiff was "bad mouthing" the contract; (2) plaintiff was approached by Phelps who was outraged and said "I'm taking you off of your job [as a JAR]", and Phelps did on three different occasions request that the International remove plaintiff from his appointed position, but in accordance with union protocols; (3) Phelps denied plaintiff's requests to attend training he needed for his JAR certification; (4) on a few occasions Phelps went off "hollering" at plaintiff including one

time with regard to a poster in plaintiff's office; (5) Phelps drove by plaintiff's house three times without stopping; (6) Phelps would not allow plaintiff to attend a meeting because he brought Don Suprenant, his Local 1292 committeeperson, with him; (7) Phelps threatened to go to labor relations and report Phelps and Suprenant for violating management rules; (8) Suprenant was disciplined and Phelps sent a letter regarding this to plaintiff's home; (9) at a Local 1292 membership meeting Phelps questioned plaintiff in an angry manner as to whether plaintiff was going to sue him or the union; (10) after plaintiff got a PPO against Phelps, plaintiff was approached by Phelps on the catwalk, and plaintiff informed him that he was violating the PPO and Phelps responded "what are you going to do, have me arrested"; and (11) Phelps came "bounding" into plaintiff's office all "wild-eyed" to deliver a new parking policy document, which, according to plaintiff, was in violation of the PPO.[4] The above actions can be separated into two categories as several of the alleged actions were lawful and authorized by International rules and, thus, we will separate those actions authorized by the International from the acts that were not.

The following actions by Phelps, which plaintiff contends supports his claim for intentional infliction of emotional distress, taken in a light most favorable to plaintiff, were lawful and authorized by International rules including: (1) Phelps' threat to take plaintiff out of his JAR position and his three requests to the International to remove plaintiff;[5] (2) Phelps' denial of plaintiff's requests to attend training for JAR certification and not allowing defendant to attend a document 46 position meeting because Suprenant, a non-document 46 member, was with him;[6] (3) questioning and harassing Suprenant and Phelps over violating management rules;[7] and (4) delivering a parking policy.[8] The remaining actions of Phelps, that plaintiff claims rise to the level of intentional infliction of emotional distress, taken in a light most favorable to plaintiff are: (1) entering plaintiff's office upset pounding his fists and knocking over things when Phelps heard plaintiff was "bad mouthing" the contract, (2) drove by plaintiff's house three times,[9] (3) hollering at plaintiff, (4) threatening to go to labor relations,[10] (5) sending a letter to plaintiff's home regarding the fact that Suprenant was disciplined; and (6) approached plaintiff and when plaintiff told Phelps he was in violation of the PPO, Phelps' responded "what are you going to do, have

me arrested." Each of these listed actions are no more than, and can be categorized as, mere insults, indignities, threat, annoyances, petty oppressions, or other trivialities. See *Graham, supra* at 674.

**\*4** This alleged conduct by Phelps does not rise to the level required to sustain an intentional infliction of emotional distress claim. Several of the challenged instances of harrassive conduct were based on conduct that was within Phelps' authority as shop chairperson. The evidence reflects a protracted period of employment tension and hostility between co-employees. Although the challenged conduct of Phelps is aggressive and intimidating and may have frightened plaintiff, it is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Teadt, supra* at 582. This standard is a difficult standard to meet, and the conduct alleged by plaintiff falls short of achieving that standard. In ruling on the JNOV motion, the trial court gave a concise and specific statement of its reasons for granting Phelps' JNOV motion on the record. See MCR 2.610(B)(3); *Badalamenti, supra* at 283. Taking plaintiff's allegations as true, we conclude that none of Phelps' alleged conduct either alone or collectively rises to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Teadt, supra* at 582. Further, it cannot be said that Phelps' conduct, under the circumstances presented, was so atrocious and intolerable that it would arouse the resentment of an average member of the community and lead him to exclaim, "Outrageous!" *Graham, supra* at 675. Because reasonable minds could not differ in finding that Phelps' conduct was not extreme and outrageous under the circumstances to support a claim of intentional infliction of emotion distress, the trial court did not err by granting his motion for JNOV.

Plaintiff's final issue on appeal is that the trial court erred in granting defendant Local 1292's directed verdict motion when defendant Phelps was acting within his scope of authority as an agent for Local 1292 and defendant Kosbar was aware when defendant Phelps intentionally inflicted emotional distress on plaintiff. We disagree.

The trial court's decision on a motion for a directed verdict is reviewed de novo. *Sniecinski, supra* at 131. The appellate

court reviews all the evidence presented up to the time of the motion to determine whether a question of fact existed and, in doing so, views the evidence in the light most favorable to the nonmoving party and grants him every reasonable inference and resolves any conflict in the evidence in his favor. *Kubczak v. Chemical Bank & Trust Co,* 456 Mich. 653, 663; 575 NW2d 745 (1998); *Thomas v. McGinnis,* 239 Mich.App 636, 643-644; 609 NW2d 222 (2000). If reasonable jurors could honestly have reached different conclusions, this Court may not substitute its judgment for that of the jury. *Wiley v. Henry Ford Cottage Hosp,* 257 Mich.App 488, 491; 668 NW2d 402 (2003).

**\*5** For the reasons provided, hereinbefore, there is no merit to this issue. Plaintiff's claim against Local 1292 is based on Phelps' action being sufficient to sustain a claim for intentional infliction of emotional distress. Because plaintiff's allegations and evidence against Phelps was not sufficient to sustain a claim for intentional infliction of emotional distress, it is also not sufficient to support a claim of intentional infliction of emotional distress against Local 1292 under a vicarious liability theory. Thus, the trial court correctly granted Local 1292's directed verdict motion. [11]

Affirmed.

**All Citations**

Not Reported in N.W.2d, 2004 WL 435379

Footnotes

1    Defendant also was on sick leave from May 27, 1997 until September 10, 1997, which he claims was based on harassment he received from Phelps.

2    Phelps' first request to have plaintiff removed from his document 46 position was denied by the International and his second request resulted in an agreement between Phelps and plaintiff.

3    It is noted that the Michigan Supreme Court has never specifically recognized or adopted the tort of intentional infliction of emotional distress. *Smith v. Calvary Christian Church,* 462 Mich. 679, 686 n 7; 614 NW2d 590 (2000). However, panels of this Court have recognized claims of intentional infliction of emotional distress. *Clark v. K-Mart Corp,* 197 Mich.App 541, 548; 495 NW2d 820 (1993). We note that in *Radzinski v. Doe,* 468 Mich. 942; 664 NW2d 223 (2003), our Supreme Court granted leave and may address the question of whether the tort of intentional infliction of emotion distress is viable in Michigan.

4    Plaintiff relies in part on Phelps' statement, at a meeting, that he needed to get rid of an appointed person (did not name any names), because the International would not, even if he needed to "take a crow bar to do it" (plaintiff was not at the meeting where this statement was made but was informed of the statement). This is not conduct that was intentionally directed at plaintiff, but rather was a general statement made to individuals other than defendant. And plaintiff has cited no applicable authority supporting that this type of statement, not made directly to plaintiff, is valid to support a claim for intentional infliction of emotional distress. Argument must be supported by citation to appropriate authority. MCR 7.212(C)(7), *Peterson Novelties, Inc v. City of Berkley,* 259 Mich.App 1, 14; 672 NW2d 351 (2003). An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. *Yee v Shiawassee County Bd of Comm'rs,* 251 Mich.App 379, 406; 651 NW2d 756 (2002).

5    Plaintiff acknowledged that it would be a bad thing for a JAR to speak out against the contract. In addition, Gregory Fedak, an International coordinator who serviced Local 1292 from 1993 until 1998, testified that Phelps followed proper International procedure in attempting to remove plaintiff from his document 46 position.

6    Fedak indicated that it was at the discretion of the president and the shop chairperson to include a JAR at a meeting or to recommend a JAR for training. In addition, the meeting was scheduled for document 46 appointed representative, and Suprenant was not a document 46 representative.

7    It is a violation of management rules to leave the plant without the authority of a supervisor. Plaintiff was authorized to go through a front door that Suprenant was not authorized to exit because he was not a document 46 representative. And it is a violation of management rules for Suprenant to follow plaintiff out the door. Fedak indicated that this violation of management rules, allowing an unauthorized individual through a restricted door, would be of concern to the shop chairperson and that a JAR should not disregard the a shop chairperson.

8    Plaintiff claims that Phelps' was in violation of the PPO when Phelps entered his office, but evidence suggests that this was within Phelps' authority as shop chairperson and was a legitimate duty, which he was allowed to perform under the modified PPO. The modified PPO allowed Phelps to carry out the legitimate duties of his job as shop chairperson.

Seyfried v. UAW Local 1292, Not Reported in N.W.2d (2004)

9     With no evidence that plaintiff stopped, plaintiff's allegation that Phelps drove by without anything further is a mere triviality. See *Graham, supra* at 674.

10    As noted, the violation of management rules would be of concern to the shop chairperson.

11    Defendants indicate that its cross-appeal was in "the unlikely event that the Court of Appeals overturns the Trial Court's ruling." Based on our resolution, it is unnecessary to address the issues raised in defendants' cross-appeal as the trial court should be affirmed.

---

**End of Document**                                                  © 2017 Thomson Reuters. No claim to original U.S. Government Works.