# EXHIBIT B

# CHARGE

Department of Licensing and Regulatory Affairs
Employment Relations Commission (MERC)
Labor Relations Division
313-456-3510

Authority: P.A. 380 of 1965, as amended.

**INSTRUCTIONS:** File an original and 4 copies of this charge (including attachments) with the Employment Relations Commission at: Cadillac Place, 3026 W. Grand Boulevard, Suite 2-750, PO Box 02988, Detroit MI 48202-2988 or 611 W. Ottawa St., 2nd Floor, PO Box 30015, Lansing, MI 48909. The Charging Party must serve the Charge on the opposing side within the applicable statute of limitations, and must file a statement of service with MERC. *(Refer to the "How to File a Charge" document under the "Forms" link at www.michigan.gov/merc.)*

Complete Section 1 if you are filing charges against an employer and/or its agents and representatives. —or—
Complete Section 2 if you are filing charges against a labor organization and/or its agents and representatives.

## 1. EMPLOYER AGAINST WHICH THE CHARGE IS BROUGHT

Check appropriate box: ☐ Private ☑ Governmental

Name and Address:

Principal Felicia Cook of John R. King
Assistant Princial Ivan Branson of John R. King
Detroit Public Schools Community District
3011 W Grand Blvd
Detroit, MI, 48202

## 2. LABOR ORGANIZATION AGAINST WHICH THE CHARGE IS BROUGHT

Name and Address:

## 3. CHARGE

Pursuant to the ~~Labor Mediation Act (LMA) or~~ Public Employment Relations Act (PERA) *(cross out one)*, the undersigned charges that the above-named party has engaged in or is engaging in unfair labor practices within the meaning of the Act.

**On an attached sheet** you must provide a clear and concise statement of the facts which allege a violation of the LMA or PERA, including the date of occurrence of each particular act and the names of the agents of the charged party who engaged in the complained of conduct. The charge should describe who did what and when they did it, and **briefly** explain why such actions constitute a violation of the LMA or PERA.

The Commission may reject a charge for failure to include the required information. However, it is not necessary to present your case in full at this time. Documentary material and exhibits ordinarily **should not** be submitted with this charge form.

**4. Name and Address of Party Filing Charge (Charging Party)**
(if labor organization, give full name, including local name and number)
Katrina Brown, 17565 Roxbury Southfield, MI, 48075

Telephone Number:

(248 ) 904-8754

**5. List ALL related MERC case(s) (if any):** none

(Name of parties)

Case No.:_____ Judge:_____

Case No.:_____ Judge:_____

I have read this charge and it is true to the best of my knowledge and belief.

*Monica L. Smith*

Signature of Representative/Person Filing Charge

Print Name and Title:
Monica Smith, Attorney, P-73439

Street Address:
19526-B Cranbrook Drive

City: Detroit

State: MI

Zip Code: 48226

Email:
monica.smith@ueaa.net

Telephone/Cell No.:
313-585-3637

Fax No.:
313-586-0089

The Department of Licensing and Regulatory Affairs will not discriminate against any individual or group because of race, sex, religion, age, national origin, color, marital status, disability, or political beliefs. If you need assistance with reading, writing, hearing, etc., under the Americans with Disabilities Act, you may make your needs known to this agency.

BER_____ (5/27)

DRIVER, SCHON & ASSOCIATES, PLC
ATTORNEYS AT LAW
19526-B Cranbrook Drive
Detroit, MI, 48221

Shanta Driver
Joyce Schon
Ronald Cruz (California)
Monica Smith

(313) 585-3637
Fax (313) 586-0089
E-mail: Monica.Smith@ueaa.net

Michigan Employment Relation Commission
3026 W. Grand Blvd, Suite 2-750
PO BOX 02988
Detroit, MI
48202-2988

October 28, 2016

Re: Attorney Appearance for Katrina Brown

To Whom It May Concern:

I, Monica Smith, am the legal representative for Katrina Brown in the attached matter. If you have any questions or concerns please contact me at the information provided above. Thank you.

_Monica R. Smith_

Monica Smith
Attorney for Katrina Brown

Proof of Service

I Monica Smith, served a completed copy of this Charge on the Detroit Public Schools Community District's Office of the General Counsel at the Fisher Building – 10th Floor, 3011 West Grand Blvd, Detroit, MI, 48202.

Monica Smith

May 26, 2016 is the date of the first charge.

## STATEMENT OF FACTS

On April 14, 2016 Principal Felicia Cook sent out notice stating that the water in John R King PreK-8, a Detroit Public School, was being shut off due to elevated levels of copper and lead in the water. The administration said that they would distribute bottled water but they did not. Children were still drinking the water from the faucets. The contaminants from copper and lead cause permanent brain damage, kidney problems, retardation of physical growth, and are toxic to every organ in the human body. Children are especially vulnerable to the effects.

Katrina Brown was the alternate building representative for the 2015-2016 school year. Teachers came to her as the alternate union building representative, requesting drinking water. As the union alternate-building representative for the teachers in her school, it was her duty to ensure that the working conditions were safe for the teachers and also the students. Therefore, Ms. Brown started asking Principal Cook for bottled water on May 23, 2016. Ms. Brown taught sixth grade. There was one sixth grade teacher out on FMLA and therefore there were about sixty students in Ms. Brown's class and the class was over heated. She requested fans for the children because they were passing out under these conditions. For the entire week, May 23, 24, 25, 26, 27, Ms. Brown verbally requested water from Principal Cook. After three days of verbal requests Ms. Cook referred her to the cafeteria cook Ms. Patton. Ms. Brown then requested water from Ms. Cook in writing on May 26, 2016.

On May 26, 2016 Ms. Brown and Ms. Booker, a teacher and Detroit Federation of Teachers Executive, met with the principal where they raised issues about the lack of drinking water in the school, the fans, the poor working conditions and how the children were dehydrated. The Assistant Principal, Ivan Branson entered the room, towards the end of the meeting. Ms. Brown was under the impression the there was agreement between her and the administrators. Later that day, on the classroom phone, Ms. Brown received a call from Ms. Cook, who told her Ericka McClure, the network administrator would call Ms. Brown. Ms. McClure called Ms. Brown in class and said that she was looking for a new school for Ms. Brown to go to and to be on standby to start a new

school Monday.  Principal Cook violated PERA as the reason for this transfer is in response to Ms. Brown and Ms. Booker's meeting with Principal Cook that morning and raising concerns about the lack of water for the children, low levels of staffing in the school and other dangerous conditions of the building.  MCL 423.210(1)(a) makes it unlawful for Principal Cook to interfere with Ms. Brown's right to negotiate with the principal about the conditions of the building with her, the staff's representative of their own free choice.

On May 27, 2016, Ms. Brown received an alert that Principal Cook entered Ms. Brown's PD360 end of the year teacher's evaluation.  Principal Cook gave Ms. Brown a score of a 78.2 percent – minimally effective.  The year before her score was a 93 percent, and before that it was a 93, then 97, then 99 – highly effective.  The scores are not based on how well a teacher performs, but rather if the principal favors that teacher. Principal Cook violated PERA because this score was not given based on her performance as a teacher, but was given based on discrimination towards Ms. Brown in retaliation for Ms. Brown raising her concerns about the unsafe conditions of the school on behalf of the employees of the school. MCL 423.210(1)(c)

On May 31, 2016 after being harassed, receiving a low evaluation score and being threated with a transfer, all based on her union activism, Ms. Brown filed a whistleblower report with the Michigan Office of Safety and Health Administration (OSHA).  Then on June 7, 2016, Ms. Brown received an email from the Assistant Principal Branson stating that she was fired.  Telling Ms. Brown that she was fired was in furtherance of the principal's agenda to stop Ms. Brown from exercising her duties as the alternate union representative at the school.  Assistant Principal Branson violated PERA by discriminating against Ms. Brown in regards to hire to discourage her membership and organizing in the union.  MCL 423.210(1)(c)

During summer school, the harassment continued.  Ms. Brown was involved in a political campaign with other DFT teachers to test for contamination in all schools and to fix the contamination in the schools.  Protesters handed out flyers to parents and students outside of school with these demands on them and education about the high levels of lead and copper in the water in the schools. On June 22, 2016, while Ms. Brown was teaching, Mr. Shazor, who was sent by Principal Cook, ran up to Ms. Brown and shoved a flyer in

2

her face and demanded to know "why she was feeding them false lies about lead in their water." This form of intimidation is a violation of PERA as it is unlawful for public employers such as the principal to cause public employees such as Ms. Brown to be coerced for engaging in lawful concerted activated for their own mutual aid and protection. MCL 423.210(1)(a) Further, Ms. Brown had to quit teaching summer school because her doctor took her off work due to the fact that this distressing incident caused Ms. Brown's blood pressure to spike very high and remain elevated.

On August 29, 2016, the teachers came back to school for the new school year, and received their schedules. Ms. Brown informed the administration that she was the new union building representative. The building representative receives an extra preparation period. On August 31, 2016, Ms. Brown was summoned into a meeting where there were three other staff members, Mr. Dawlen (the previous building representative), Mr. Beattie, and Mrs. Booker (who is also a DFT Executive board member) and the Assistant Principal. The Assistant Principal stated that he wanted to know how did Ms. Brown get selected to win the nomination, because Principal Cook went around and asked teachers whether or not they voted for Ms. Brown and that some of the teachers did not vote for Mr. Brown. One teacher, Mr. McCullen told Ms. Brown and Ms. Booker that Principal Cook did in fact ask him if he voted for Ms. Brown. Assistant Principal Branson said that Ms. Brown would have to *prove* that she was the new building union representative. He said that you would have to go to the DFT and get the nomination forms and the ballot. Interim DFT President Ivy Bailey came to the school with the ballots and showed him to *prove* that Ms. Brown won. Principal Cook violated PERA as polling teachers on who they voted for is it is direct management interference, with concerted union activity, namely the employees electing Ms. Brown as the building representative. MCL 423.210(1)(a). Assistant Principal Branson violated PERA by restraining Ms. Brown in a meeting and interrogating her on how she became elected as the union building representative. MCL 423.210(1)(a)

During this August 31 meeting, Principal Cook entered the room and told the assistant principal that the meeting was unprofessional and tried stop it twice. Then she left, but the Assistant Principal ignored her and continuously continued the meeting a half hour more. Then the principal came back into the room and interrupted Ms. Brown as

3

she was talking to the other teachers and Ms. Brown responded by saying, "I thought you said you were leaving. Bye." On September 13, 2016, Ms. Cook sent Assistant Principal Branson to Ms. Brown's classroom in the middle of teaching to order her sign and "Agreement of Work Rules 2016-2017" and falsely back-date it for Sunday, August 28, 2016 so that in Ms. Cook's Written Warning, Ms. Cook could state that on Monday, August 29, 2016 the administration went over Work Rules and Harassment Policy. Principal Cook violated PERA by retaliating against Ms. Brown for being elected as the union building representative when she brought the frivolous write up against her two weeks later and had her falsely back date it. MCL 423.210 (1)(a) Principal Cook was searching for something to use against Ms. Brown, which is why the write up came two weeks late and not sooner.

Finally, on August 30, 2016, the administration and the school engineer, Emanuel El-Amin said that the water was safe to drink. Around the September 14, 2016 Ms. Brown started to make calls to the health department and water department and the news and asked if the water was safe to drink. They responded that the water should not have been turned back on. The school then sent out a letter on September 19, 2016 stating that the water was now not safe to drink. Ms. Brown, then called the Department of Environmental Quality and the EPA and spoke to Ms. Kilmer letter letting them know that the children and staff had been drinking contaminated water for about twelve days.

On September 20, 2016, Ms. Brown also sent this notification to Detroit Public School officials such as Network Leader Leentet Campbell Williams, Executive Director Felicia Venable, Superintendent Alisha Meriwether, and Principal Cook. In response to her efforts to bring attention to the health and safety of the children and staff in the school, two days later Ms. Brown was transferred to Ronald Brown Academy. Principal Cook violated PERA by using the leveling process to "get rid of" Ms. Brown and transfer her to another school, Ronald Brown Academy. Principal Cook did not want Ms. Brown to be a union building representative and advocate for safe working conditions, therefore she discriminatorily transferred Ms. Brown to a different school and violated MCL 423.210(1)(c). Principal Cook also violated PERA because she interfered with Ms. Brown's rights to assist in the labor organization in the school and engage in lawful concerted activities for mutual aid and protection. MCL 423.210(1)(a).

4