# EXHIBIT C

469 Fed.Appx. 154
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also Fourth
Circuit Rule 32.1 (Find CTA4 Rule 32.1)
United States Court of Appeals,
Fourth Circuit.

Christina G. HOOD, Plaintiff–Appellant,

v.

SUFFOLK CITY SCHOOL BOARD; Deran
R. Whitney, Interim Superintendent, Suffolk
Public Schools, Defendants–Appellees.

No. 11–1044.
|
Submitted: Dec. 21, 2011.
|
Decided: March 13, 2012.

**Synopsis**
**Background:** Teacher brought § 1983 action in state
court against school board and superintendent alleging a
dangerous condition existed in school caused by mold and
bacteria growths before she was hired. Following removal,
the United States District Court for the Eastern District
of Virginia, 760 F.Supp.2d 599, Raymond A. Jackson, J.,
dismissed. Teacher appealed.

**Holding:** The Court of Appeals, held that teacher did not
have a liberty interest in bodily integrity.

Affirmed.

West Headnotes (1)

[1]     **Constitutional Law**
           👉 Rights and interests protected in general
        **Education**
           👉 Premises liability

Teacher did not have a liberty interest
in bodily integrity, as would support her
§ 1983 claim against school board and
superintendent for the alleged violation of
her substantive due process rights under
the Fourteenth Amendment for alleged
dangerous condition in school caused by mold
and bacteria growths before she was hired.
U.S.C.A. Const.Amend. 14; 42 U.S.C.A. §
1983.

2 Cases that cite this headnote

**\*155** Appeal from the United States District Court for
the Eastern District of Virginia, at Norfolk. Raymond A.
Jackson, District Judge. (2:10–cv–00500–RAJ–TEM).

**Attorneys and Law Firms**

David S. Bailey, Environmental Law Group, PLLC,
Richmond, Virginia, for Appellant. Wendell Myron
Waller, Suffolk Public Schools, Suffolk, Virginia, for
Appellees.

Before DUNCAN, DAVIS, and KEENAN, Circuit
Judges.

**Opinion**

Affirmed by unpublished PER CURIAM opinion.

Unpublished opinions are not binding precedent in this
circuit.

PER CURIAM:

**\*\*1** Christina Hood, an elementary school teacher
employed by the School Board of the City of Suffolk,
Virginia (the Board), brought this action against the
Board and Deran R. Whitney, an administrator of the
Suffolk public school system (collectively, the defendants).
In an action brought under 42 U.S.C. § 1983, Hood
alleged that the defendants violated her constitutional
right to bodily integrity by deliberately exposing her
to a harmful workplace environment, which resulted
from the presence of excessive mold and bacteria in her
classroom. The district court dismissed Hood's complaint,
holding that she had not stated a cognizable violation of

a constitutional right. Upon our review, we affirm the district court's judgment.

## I.

During the 2007–2008 school year, Hood was employed by the Board as a fourth grade teacher at Booker T. Washington Elementary School (the School). When Hood began the school year in August 2007, she immediately noticed an elevated level of humidity inside the School. She observed that books and papers that had been left in her classroom were "soggy" and warped as a result of accumulated moisture. Hood also observed that dehumidifiers were placed throughout the School.

Several days later, Hood's eyes became "itchy" and irritated. By her second week of teaching, Hood began to experience serious reactions similar to those caused by allergies. By early September 2007, Hood also thought that she may have contracted a cold or a sinus infection. Hood additionally observed that several students suffered from similar symptoms.

Based on these considerations, Hood requested a dehumidifier from the assistant principal, Christopher Phillips. Although Phillips stated that none immediately was available, Hood was able to obtain one for use in her classroom. She used the dehumidifier each day, and found that the dehumidifier regularly collected a sufficient amount of water overnight to activate the automatic "shut-off" feature of the machine.

By September 19, 2007, Hood's symptoms had worsened, and she developed a severe rash around her mouth that caused swelling. Hood informed Phillips that she was ill, that she was uncertain about the cause, and that she would need to leave work to consult a physician. During their conversation, Phillips stated, "[W]e know there is a mold problem and it comes up through the ground in the summertime."

*156 Hood visited her primary care physician that day and received a diagnosis of sinusitis, bronchitis, lip inflammation and infection, and mold exposure. At that time, Hood received a prescription for antibiotics.

The next day, Hood submitted to the School's principal, Patricia Montgomery, a note from her physician reflecting his diagnosis of her condition. Before Hood gave Montgomery this note, she had been informed by other teachers that school administrators would order mold testing if provided with documentation that mold in the School was causing illness. However, although Montgomery made a copy of the physician's note, she took no other immediate action.

**2 On September 26, 2007, a school administrator, Terry Napier, visited Hood's classroom to inquire about her medical history and symptoms, and whether any of the students had experienced similar problems. Hood explained her symptoms, and related that some students also were sick and had allergy problems. Additionally, Hood informed Napier that there was excessive humidity in the classroom.

Napier obtained air samples from Hood's classroom, although he was not properly trained in mold sampling. At that time, Hood was left with the impression that Napier thought that her concerns about mold were unfounded.

When the rash on Hood's face spread and caused her greater discomfort in early October 2007, Hood scheduled two more appointments with her primary care physician. Hood's physician concluded that a fungus was the cause of Hood's rash, and he proscribed a strong antifungal cream.

After Hood made several inquiries about the mold test results, Montgomery and Napier held a meeting on October 16, 2007, in which they shared the results with her. Referring to the results, Napier told Hood that the classroom did not have a mold problem, because the mold spore count was higher outside than inside the classroom. Hood eventually obtained these results, which revealed instead that levels of certain species of mold actually were higher inside the classroom.

Starting on October 10, 2007, the maintenance staff began cleaning Hood's classroom on a daily basis, rather than on the customary weekly schedule. After their meeting on October 16, 2007, Montgomery informed Hood that her classroom would be thoroughly cleaned every night for two weeks, to see if Hood's condition would improve.

By this point, Hood's eyes were swollen and the rash on her face had worsened. Her primary care physician instructed her not to return to work until October 19, 2007. When Hood informed Phillips about her physician's instructions,

Phillips directed Hood to file a worker's compensation claim, because she would not be compensated for this sick leave.[*]

After October 19, 2007, Hood was able to return to work briefly. However, by November 2, 2007, Hood's condition had deteriorated again, and her primary care physician rendered a diagnosis of facial fungal dermatitis. Hood's physician also instructed her that she should no longer work in the same environment. When Hood gave Montgomery the physician's note to this effect, Montgomery responded: "What am I supposed to do with this? *157 ... Where else are you going to work, you are a teacher?"

In early November 2007, a mold inspection company, Marine Chemist, took mold samples from Hood's classroom as part of a "limited indoor evaluation." Hood contends that Napier and other administrators at the School deliberately failed to inform Marine Chemist about the recent "aggressive cleaning history" of Hood's classroom, which she alleged was a practice employed to conceal the presence and severity of mold at the School. According to Hood's complaint, Napier also failed to provide Marine Chemist with the relevant findings of an inspection conducted in July 2003, which had found excessive levels of mold in the School and concluded that its heating, ventilation, and air conditioning system was unable to dehumidify the School properly. Hood later obtained a copy of Marine Chemist's report regarding her classroom, which confirmed the presence of multiple species of mold. Further, this report recommended to Napier that a more thorough investigation be conducted in the event that Napier received additional complaints.

**3 At all times, the Board was aware of Hood's increasing health problems. Hood consulted an additional physician, and she began taking steroids to control her symptoms. By late November 2007, that physician informed Hood that her allergy test results showed that she was very allergic to mold. The physician further informed Hood that, if she did not stop working in the School, she would continue to require many medications and shots. According to allergy test results, Hood had exhibited allergic responses to several species of mold that had been identified in her classroom.

In December 2007, Hood requested that she be transferred to another school. However, there were no vacant positions for which Hood was qualified. The Board did not take any action at that time to move Hood to another classroom.

For the remainder of the school year, the floors of Hood's classroom were washed more frequently than they had been previously. Hood alleged that, although these repeated washings initially may have removed some mold, the repeated washing process ultimately caused increased indoor mold growth.

In June 2008, Hood obtained another mold inspection of her classroom. Even though Hood's classroom had been cleaned repeatedly, the inspection revealed that mold growth was still present, as well as excessive moisture.

Hood now takes several allergy medications, and expects that she will have to take these allergy medications for an unknown, extended period of time.

According to Hood, the presence of excessive mold and moisture in her classroom was not an isolated incident. Instead, she alleges that the School had a long history of water leaks and inadequate attention to maintenance problems. Further, Hood stated that the defendants were aware of the condition of the School, and of the health risks that mold exposure posed to its occupants.

Hood filed a complaint against the defendants in a Virginia state court, which the defendants removed to the district court. In an amended complaint, Hood contended that she had been exposed to excessive levels of mold and bacteria in her classroom at the School, which caused her severe and permanent allergic reactions and respiratory difficulties. Hood also alleged that the defendants engaged in deceitful practices to conceal evidence of mold growth at the School, and deliberately caused Hood to be exposed to a harmful *158 workplace while fully cognizant of the risk to her safety from mold exposure.

In her amended complaint, Hood brought two causes of action pursuant to 42 U.S.C. § 1983, which alleged that the defendants violated her liberty interest in bodily integrity and deprived her of due process under the Fourteenth Amendment of the United States Constitution. In her first cause of action, Hood claimed that the Board failed to train its employees properly regarding mold inspection procedures and remediation, and had a practice of concealing the harmful effects of excessive moisture and

mold. In her second cause of action, Hood claimed that the defendants engaged in deliberate acts that created a dangerous work environment, which violated her right to bodily integrity. The defendants filed a motion to dismiss Hood's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.

**\*\*4** The district court characterized Hood's claims as substantive due process claims "based on her right not to be harmed by the conditions of the School in which she works." *Hood v. Suffolk City Sch. Bd.*, 760 F.Supp.2d 599, 601 (E.D.Va.2010). Because Hood sought relief under 42 U.S.C. § 1983, the district correctly observed that Hood was required to allege a violation of a cognizable constitutional right. *Id.* The district court concluded that Hood failed to meet this requirement. *Id.* at 602.

In reaching this conclusion, the district court relied on the Supreme Court's decision in *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), a case in which a § 1983 claim was brought on behalf of a city sanitation employee who had died from asphyxia while trying to repair a sewer line. *See Hood*, 760 F.Supp.2d at 601–02. There, the plaintiff alleged "a constitutional right to be free from unreasonable risks of harm to his body ... and a constitutional right to be protected from the [city's] custom and policy of deliberate indifference toward the safety of its employees." *Collins*, 503 U.S. at 117, 112 S.Ct. 1061. The complaint in *Collins* also alleged that the City violated those constitutional rights "by following a custom and policy of not training its employees about the dangers" of that workplace, namely, the dangers posed by sewer lines and manholes. *Id.*

The Supreme Court concluded that "[n]either the text nor the history of the Due Process Clause supports [the] claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Id.* at 126, 112 S.Ct. 1061. Therefore, the Court held that the Fourteenth Amendment Due Process Clause "does not impose an independent federal obligation upon municipalities to provide certain minimal levels of safety and security in the workplace." *Id.* at 130, 112 S.Ct. 1061.

Considering the facts alleged in Hood's complaint, the district court concluded that her claim "falls within the *Collins* precedent." *Hood*, 760 F.Supp.2d at 602. Although Hood attempted to distinguish the holding in *Collins* by claiming that her liberty interest in bodily integrity had been violated, rather than a constitutional right to be free from unreasonable risk of bodily harm, *see Collins*, 503 U.S. at 117, 112 S.Ct. 1061, the district court did not consider this distinction to be persuasive. *See Hood*, 760 F.Supp.2d at 601–02. The district court noted that courts have recognized a liberty interest in bodily integrity only in very limited circumstances, such as when minors are molested by government employees. *Id.* (citing **\*159** *Wragg v. Vill. of Thornton*, 604 F.3d 464, 466–68 (7th Cir.2010) (minor's claim of molestation against government official); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir.1997) (woman's claim of rape against police officer); *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443, 450–52 (5th Cir.1994) (en banc) (student's claim of sexual abuse against teacher); *Hall v. Tawney*, 621 F.2d 607, 609 (4th Cir.1980) (child's claim against teacher that paddling in school violated the child's substantive due process rights under the Fourteenth Amendment Due Process Clause)). The district court concluded that Hood had provided neither factual nor legal support for the extension of substantive due process to the circumstances of her case, in which the harmful conditions of Hood's workplace allegedly caused her injury. *Id.* at 602.

**\*\*5** The district court held that Hood's substantive due process claim that the defendants violated her liberty interest in bodily integrity was not a cognizable violation of a constitutional right. *Id.* Accordingly, the district court concluded that Hood had failed to state a claim for which relief could be granted under § 1983, and granted the defendants' motion to dismiss. *Id.* Hood appeals.

## III.

We review de novo a district court's ruling on a motion to dismiss an action under Fed.R.Civ.P. 12(b)(6). *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir.2009). To survive a motion to dismiss, a complaint must contain factual allegations that "raise a right to relief above the speculative level and ... state a claim to relief that is plausible on its face." *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir.2009) (internal quotation marks omitted). In conducting this

Hood v. Suffolk City School Bd., 469 Fed.Appx. 154 (2012)
281 Ed. Law Rep. 28, 33 IER Cases 955

review, we "take the facts in the light most favorable to the plaintiff," but we "need not accept the legal conclusions drawn from the facts." *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir.2008) (internal quotation marks omitted).

We have reviewed the record, the briefs, and the arguments presented by the parties in this appeal. We conclude, like the district court, that Hood asserted a substantive due process claim asserting a right to be free from harm caused by the dangerous condition of her workplace. As the district court properly recognized, however, the Supreme Court's decision in *Collins* has plainly stated that this type of claim does not allege a cognizable violation of a federal constitutional right. *See* 503 U.S. at 117, 126, 130, 112 S.Ct. 1061.

Hood attempts to distinguish the holding in *Collins* on the ground that, in the present case, the defendants engaged in deliberate acts that violated her right to bodily integrity, or acted with deliberate indifference to that right. We find no merit in this distinction and agree with the district court

that *Collins* is dispositive of Hood's claim, because Hood's injury, as alleged, was caused by the dangerous condition of her workplace due to mold growth and excessive humidity in her classroom. *See Hood,* 760 F.Supp.2d at 602.

Our conclusion is unaffected by Hood's characterization of her substantive due process claim as being based on a liberty interest in bodily integrity, rather than on a constitutional right to be free from unreasonable risk of harm to one's body in the workplace. As we have stated, the Supreme Court's decision in *Collins* is dispositive of Hood's described claim. We therefore affirm the district court's order dismissing Hood's amended complaint, based on the reasons well stated by the district court.

*AFFIRMED.*

**All Citations**

469 Fed.Appx. 154, 2012 WL 812369, 281 Ed. Law Rep. 28, 33 IER Cases 955

Footnotes

\*      In November 2007, Hood began communicating with the defendants' workers' compensation insurance company, attempting to qualify for workers' compensation benefits. In February 2008, the insurer denied her claim, and Hood filed a claim with the Virginia Workers' Compensation Commission, which Hood states has not yet been resolved.

End of Document          © 2017 Thomson Reuters. No claim to original U.S. Government Works.