SHANTA DRIVER, Bar No. P65007
MONICA SMITH, Bar No. P73439
United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
19526-B Cranbrook Drive
Detroit, MI 48221
(313) 407-4865
shanta.driver@ueaa.net, monica.smith@ueaa.net
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| KATRINA BROWN,<br><br>Plaintiff,<br><br>vs.<br><br>DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT, MAYOR MIKE DUGGAN, JUDGE STEVEN RHODES, ALYCIA MERIWEATHER, FELICIA VENABLE-AKINBODE, MATHEW SAM, DR. SHERRELL HOBBS, FELICIA COOK, IVAN BRANSON, GEORGINA TAIT, and DOES 1-5,<br><br>Defendants.<br>_____ | **CASE NO. 2:17-cv-12936-BAF-DRG**<br><br>**PLAINTIFF'S MOTION FOR RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS**<br><br>**– HEARING REQUESTED –**<br><br>Date:       No hearing set.<br>Time:<br>Courtroom:<br>Judge:       Hon. Bernard A. Friedman |

PLAINTIFF'S MOTION FOR RECONSIDERATION OF DISMISSAL
OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS CLAIMS
CASE NO. 2:17-CV-12936-BAF-DRG

1

TO THE ABOVE-ENTITLED COURT AND TO ALL PARTIES OF RECORD AND THEIR ATTORNEYS HEREIN:

PLEASE TAKE NOTICE THAT Plaintiff Katrina Brown moves the Court to reconsider its November 27, 2017 Order (Dkt. No. 14) dismissing the above-entitled case and to reverse its dismissal of the Plaintiff's First Amendment, Substantive Due Process, and Intentional Infliction of Emotional Distress claims.

Civil Local Rule 7.1 allows for motions for reconsideration within 14 days after entry of an order. L.R. 7.1. This Motion is filed within that time limitation.

Justice requires reconsideration. Plaintiff was not able to respond to the Motions to Dismiss by November 10, 2017 because of health reasons described in the Declaration of Monica Smith. Defendants' Motions to Dismiss make plain errors of law, about which the Court was not able to hear from Plaintiff. Further, the Motions and the Order do not speak on whether the alleged defects of the Complaint could be corrected and survive a subsequent motion to dismiss. The Court's discretion to determine whether to allow this Plaintiff to preserve her lawsuit by amending her complaint "is limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987) (finding a lower

court's failure to grant leave to a plaintiff to amend her complaint to be an "abuse of discretion") (citation omitted).

Not only does Plaintiff state claims upon which relief can be granted; the Michigan Employment Relations Commission (MERC), after a full trial including 22 witnesses, found that Defendant Detroit Public Schools Community District (DPSCD) violated state employment law in several ways, including violating Plaintiff's right to engage in concerted protected activity without interference, restraint or coercion. (See MERC Decision EXHIBIT A at p. 41-42.) This decision has a collateral estoppel effect on Plaintiff's First Amendment retaliation claim.

It would be a gross miscarriage of justice, and would compromise the legitimacy of this Court, for Plaintiff to be able to win a full trial against the District on her employment claims, while the actual officials who retaliated against Plaintiff to further a Flint-style coverup endangering the health of Detroit's children are shielded and protected.

By Plaintiff's Attorneys,
UNITED FOR EQUALITY AND AFFIRMATIVE
ACTION LEGAL DEFENSE FUND (UEAALDF)

BY:  _/s/ Monica Smith_____
19526-B Cranbrook Drive
Detroit, MI 48221
(313) 585-3637
Dated: December 11, 2017

PLAINTIFF'S MOTION FOR RECONSIDERATION OF DISMISSAL     3
OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS CLAIMS
CASE NO. 2:17-CV-12936-BAF-DRG

SHANTA DRIVER, Bar No. P65007
MONICA SMITH, Bar No. P73439
United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
19526-B Cranbrook Drive
Detroit, MI 48221
(313) 407-4865
shanta.driver@ueaa.net, monica.smith@ueaa.net
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

KATRINA BROWN,

Plaintiff,

vs.

DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT, MAYOR
MIKE DUGGAN, JUDGE STEVEN
RHODES, ALYCIA MERIWEATHER,
FELICIA VENABLE-AKINBODE,
MATHEW SAM, DR. SHERRELL
HOBBS, FELICIA COOK, IVAN
BRANSON, GEORGINA TAIT, and
DOES 1-5,

Defendants.

_____

**CASE NO. 2:17-cv-12936-BAF-DRG**

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS**

**– HEARING REQUESTED –**

Date:     No hearing set.
Time:
Courtroom:
Judge:     Hon. Bernard A. Friedman

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR                    i
RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT,
DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS CLAIMS     -     CASE NO. 2:17-CV-12936-BAF-DRG

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ iv

SUMMARY OF ARGUMENT ...................................................... 1

STATEMENT OF FACTS ............................................................ 5

ARGUMENT .................................................................................. 11

I.   When considering a motion to dismiss, the Court must construe the allegations in the light most favorable to Plaintiff and should liberally grant leave to amend so as to prevent injustice. ...................................................................... 12

II.  Plaintiff states a valid First Amendment claim against the DPSCD Defendants.................................................. 13

     a.   The DPSCD Defendants applied the wrong "adverse action" standard borrowed from Title VII cases; rather, employers violate the First Amendment if their acts would "deter a person of ordinary firmness."............... 14

     b.   The DPSCD Defendants' actions against Brown would deter a person of ordinary firmness. .................. 18

     c.   Under the doctrine of collateral estoppel, this Court to give preclusive effect to an Administrative Law Judge's finding that Defendant DPSCD unlawfully interfered with Plaintiff's speech. ................................ 20

III. Plaintiff states a valid Substantive Due Process claim against Defendant Duggan and the DPSCD Defendants for violation of bodily integrity.................................................. 24

     a.   Defendants misstate the test for a substantive due process violation: the issue is whether the exposure of Plaintiff and other staff and children to poisoned water

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT,
DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS CLAIMS    -    CASE NO. 2:17-CV-12936-BAF-DRG

ii

and the attempts to silence Plaintiff to cover up that policy "shock the conscience." ....................................... 25

           b.     The Defendants' acts "shock the conscience" because they acted with deliberate indifference, by knowingly exposing Plaintiff and the children and staff at John R. King to poisoned water and by seeking to silence Plaintiff to carry out this policy. ................................... 28

           c.     The Defendants are not entitled to qualified immunity for their actions. ........................................................ 32

    IV.    This Court cannot conclude that denying children access to safe, drinking water, exposing Plaintiff, other staff, and children to poisoned water, and intimidating and retaliating against Plaintiff for defending herself and the children is as a matter of law "not outrageous"; Plaintiff states a valid claim of intentional infliction of emotional distress. ............... 32

CONCLUSION....................................................................... 36

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461 (6th Cir. 2011)................................................................................ 12,18

*Bart v. Telford*, 677 F.2d 622 (7th Cir.1982) ............................................. 17

*Boler v. Earley,* 865 F.3d 391 (6th Cir. 2017)........................................... 3,25

*City of Troy v. Hershberger*, 27 Mich. App. 123 (1970)............................. 21

*Conn v. Board of Education*, 586 F.Supp. 2d 852, 862 (E.D. Mich. 2008) . 21

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ............................26-27

*Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807 (6th Cir.2007)................................................................................ 17

*DirecTV, Inc. v. Karpinsky*, 274 F.Supp.2d 918 (E.D. Mich. 2003)................................................................................ 1,11,23,36

*Doe v. Claiborne County*, 103 F.3d 495, 506 (6th Cir. 1996)................ 24,32

*Ely v. Dearborn Heights School District No. 7*, 150 F.Supp.3d 842 (E.D. Mich. 2015) ........................................................................16-18

*Ely v. Dearborn Heights School District No. 7*, 655 Fed.Appx. 495 (6th Cir. 2016)................................................................................ 16

*Fritz v. Character Tp. of Comstock*, 592 F.3d 718 (6th Cir. 2010). 2,13,15,17

*Hollins v. Atlantic Co., Inc.*, 188 F.3d 652 (6th Cir. 1999) .....................14-15

*Howell v. Vito's Trucking & Excavating Co.*, 386 Mich. 37 (1971)............ 22

*Lewis v. LeGrow*, 258 Mich.App. 175, 196 (2003) ................................32-33

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS   -   CASE NO. 2:17-CV-12936-BAF-DRG

iv

*Marks v. Shell Oil Co.*, 830 F.2d 68 (6th Cir. 1987) ..................................... 12

*Mino v. Clio School Dist.*, 255 Mich.App.60 (2003).................................... 34

*Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1 (2003) ......... 22

*Saucier v. Katz*, 533 U.S. 194 (2001) .......................................... 32

*Seyfried v. UAW Local 1292*, No. 242566, 2004 WL 435379 (Mich. Ct. App. March 9, 2004) ....................................................... 35

*Storey v. Meijer, Inc.*, 431 Mich. 368 (1988) ................................ 21

*Temple v. Kelel Distrib. Co*, 183 Mich. App. 326 (1990) ........................... 21

*Thaddeus–X v. Blatter*, 175 F.3d 378 (6th Cir.1999) .................................. 17

*University of Tennessee v. Elliott*, 478 U.S. 788 (1986) .............................. 20

*Upsher v. Grosse Pointe Public School System*, 285 F.3d 448 (2002) ........ 26

*Viele v. DCMA*, 167 Mich. App. 571, mod. 431 Mich. 898 (1988), on remand 211 Mich. App. 458 (1995).................................................. 22

*Watkins v. City of Battle Creek*,  273 F.3d 682 (6th Cir. 2001) ................... 26

*Webb v. McCullough*, 828 F.2d 1151 (6th Cir. 1987) ................................. 24

# MEMORANDUM OF POINTS AND AUTHORITIES

## SUMMARY OF ARGUMENT

This case is about the Defendants acting like the exposed, corrupt officials of Flint, Michigan by disregarding the health and safety of Detroit's children, knowingly exposing them and their families to poisoned water in their schools, lying to them about it, and retaliating against a teacher who had the courage and integrity to speak up and prevent this from happening.

The Motions to Dismiss make a number of standard legal arguments. What is common to all of them is that they pretend that this is simply a case regarding Katrina Brown's terms of employment. They ignore the actual issues of this case: whether the Plaintiff and Detroit's children can unwillingly be made to suffer from lack of water and later exposed to poisoned water and whether Plaintiff has the right to speak out to prevent this.

Motions for reconsideration may be granted for "the necessity to correct a clear error of law or prevent manifest injustice." *DirecTV, Inc. v. Karpinsky*, 274 F.Supp.2d 918, 920 (E.D. Mich. 2003) (citation omitted) (emphasis added).

Due to health reasons described in the Declaration of Monica Smith, Plaintiff did not file an opposition within the time prescribed by the Local Rules. This Court, when it granted the Defendants' Motions to Dismiss (Dkt. No. 14), had

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS     -     CASE NO. 2:17-CV-12936-BAF-DRG

1

not heard from Plaintiff as to how the Defendants' Motions wrongly applied the law.

The Court dismissed this case simply by concurring with Defendants' main points. Plaintiff asks this Court to reconsider.

Regarding Plaintiff's **Count I (First Amendment) claim**, Defendant applied the wrong standard of "adverse action" borrowed from Title VII retaliation cases, not First Amendment retaliation cases, which is what this case is. This is not a Title VII case where a case for retaliation must include an allegation of a change in one's terms of employment. The First Amendment test is whether Defendants' actions "would deter a person of ordinary firmness," in this case, from speaking out to prevent Defendants from exposing children to poisoned water and lying them and their families about it. *Fritz v. Character Tp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (the standard of a materially adverse employment action is inapplicable to First Amendment cases). As stated in the Complaint, which at this stage of the litigation must be presumed as true, Defendants' actions far exceed this standard. To this day, the teachers who had elected Brown to be their site representative are fearful of advocating in the same manner as Brown had, for fear of retaliation.

Plaintiff's **Count V (Substantive Due Process - Bodily Integrity)** claim for exposure to poisoned water has been recognized in the Flint Water Cases that are being heard in this District. See *Boler v. Earley,* 865 F.3d 391 (6th Cir. 2017) (ruling that plaintiffs' §1983 claims, including bodily integrity claims, were not preempted by the Safe Drinking Water Act). The cases that Defendants cite in their Motions to Dismiss deal with the alleged negligence and/or deliberate indifference of employers in failing to train and/or warn employees who encounter dangerous work conditions. The courts rejected an affirmative duty to prevent harm; this case involves the creation of a harm and the intentional exposure of children and adults to that harm, with full knowledge that the water was contaminated, and the conscious, affirmative misrepresentation to those people that the "water was safe," which happened in Flint and which happened here.

Plaintiff's **Count VI (Intentional Infliction of Emotional Distress)** claim should not be dismissed. Whether a juror can reasonably find Defendants' conduct was "outrageous" is a factual determination that should be left to a jury. Defendants' authorities are not persuasive as they all involve personal conflicts in the workplace and do not rise to the outrage involved in this case: bullying and driving out a teacher who was trying to prevent the children she teaches from being dehydrated and later poisoned. Defendants' decision to prioritize the image of the

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT,
DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL
DISTRICT CLAIMS     -     CASE NO. 2:17-CV-12936-BAF-DRG

3

District over the health of children is relevant to whether their conduct was "outrageous," and the courts have no business in deciding in lieu of the citizens of Michigan that a Flint-style coverup and poisoning of children is not "outrageous."

Not only do the allegations state "claims upon which relief can be granted"—key elements of those claims have been found to be true after a full trial before the Michigan Employment Relations Commission (MERC). (See EXHIBIT A - MERC ALJ Decision) On November 16, 2017, the Honorable Julia Stern found that Defendants Cook and Branson violated the Public Employment Relations Act by:

- trying to transfer Plaintiff in May 2016 in retaliation for demanding drinking water for the children;

- disciplining Plaintiff for her speech while defending her rightful election as site representative; and

- threatening staff to not make complaints to government agencies.

EXHIBIT A at 41-42.

As shown below, Defendants' Motions to Dismiss wrongly applied the law. This Court must not effect a gross obstruction of justice, and it should reverse its dismissal.

**STATEMENT OF FACTS**

On April 14, 2016, Defendant DPSCD shut off the water at 19 schools after finding that they had dangerous levels of lead and/or copper in their water. John R. King Academic and Performing Arts Academy ("John R. King") was one of those schools. Its water was shut down for high levels of copper. Complaint ¶36. Scientific studies show that copper and lead contamination in drinking water can cause permanent brain damage, kidney problems, and retardation of physical growth, and is toxic to every organ in the human body. Children are particularly vulnerable to their effects. Complaint ¶38.

After shutting off the water, John R. King provided only one 4-ounce (half-cup) bottle of water to each child per day, far below the amount of water needed to prevent thirs and maintain good health. Complaint ¶40. The school soon ran out of water, and additionally forbade children from bringing water to school. Complaint ¶¶42,44. The children and staff suffered without water, especially as the hot summer months approached. Children in Plaintiff Brown's class became ill and some passed out in class. Complaint ¶¶43-45. On May 23, 24, 25, 26, and 27 of 2016, Plaintiff Brown complained to Defendant Principal Cook in writing that the children needed bottled water and fans to cool their rooms. On May 26, 2016, she and another teacher met with Cook to voice this complaint. Complaint ¶¶46-47.

Plaintiff Brown was retaliated against by Defendant Cook for these acts advocating for the safety and welfare of her children. On May 26, 2017 Brown was informed that Cook sought her immediate transfer to another school. Complaint ¶48. On May 27, 2017, after Brown had received consistent ratings of "highly effective" in previous years, Cook gave Brown a rating of "minimally effective" while violating DPSCD policies and her own previous practices for evaluating teachers. In DPSCD, three consecutive years of a "minimally effective" rating leads automatically to termination. Complaint ¶¶49-50.

On June 7, 2016, Plaintiff Brown sent an email to Principal Cook's immediate superior, Defendant Dr. Sherrell Hobbs. Brown reiterated her concerns about the children and stated that the school's administrators were not addressing the problems. Within an hour, Defendant Branson emailed Brown stating "Your [sic] FIRED" and made false accusations about selling food to her students. Complaint ¶¶53-54.

Dr. Hobbs told Brown to raise her concerns with administrators at her site, even though Brown was complaining about those very administrators. Complaint ¶55. Hobbs later would ignore Brown's efforts to appeal her "minimally effective" evaluation. Complaint ¶60.

The stress of Defendants' retaliation had a physical toll on Plaintiff Brown. Brown had to quit teaching summer school in summer 2016 at the orders of her doctor due to high blood pressure. Complaint ¶59.

During the summer and early fall of 2016, Defendant Cook had numerous exchanges with other DPSCD administrators conspiring to remove Plaintiff Brown from John R. King. One such administrator insisted at one point that they finally "pull the trigger" to move Brown out of John R. King. EXHIBIT A at p. 22. In her emails and in her later testimony before the Michigan Employment Relations Commission (MERC), Defendant Cook admitted that she considered Plaintiff's advocacy around clean drinking water as cause for removal from John R. King: she called it an "attack[ on] her character [sic] and was undermining her position at the school." EXHIBIT A at pp. 32-33.

In late August 2016, various Defendants turned on the water at John R. King and other schools, accompanied by a public relations campaign claiming that DPSCD had met safety standards. John R. King had replaced the fixtures to make it look like the school had taken action. On August 29, 2016, Defendant Mayor Mike Duggan issued a press release lying about DPSCD correcting the health and safety violations in its buildings. Duggan stated that John R. King was a school that was "in full compliance with city health and safety codes." Duggan's office

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS    -    CASE NO. 2:17-CV-12936-BAF-DRG

7

publicized a "certificate of compliance" for John R. King. Complaint ¶¶61-62. At a back-to-school staff meeting at the end of August 2016, the District administration announced that the water at the school was safe to drink.

On August 31, 2016, Defendant Branson challenged Plaintiff Brown's status as the duly-elected site representative for teachers at John R. King. Branson unlawfully canvassed teachers demanding to know if they had voted for Brown, and even though Brown had run unopposed and there had been a public posting about her election, Branson demanded further "proof" that she had been elected from the Detroit Federation of Teachers. Complaint ¶65. Defendant Cook subsequently, and as later found by MERC also wrongfully, disciplined Plaintiff Brown for her behavior during this meeting in which her rights and authority and the right of workers to elect their own representatives had been attacked. Complaint ¶69.

For the first time in her nearly twenty years of teaching, Plaintiff Brown was inexplicably reassigned from teaching middle-school science to teaching elementary schoolers, even though the school had a shortage of teachers to teach science. Complaint ¶66.

From the beginning of the school year, children at John R. King reported feeling sick. Some children had difficulty concentrating. Plaintiff Brown developed

rashes on her body. She and the nine-year-old children she taught were located next to the faucet at John R. King that had reported the highest levels of copper. Complaints from teachers and students prompted Plaintiff Brown to contact independent agencies on September 15 and 16, 2016. They informed Brown that the school never should have turned the water back on because the District had not taken appropriate steps to repair the problem. Complaint ¶¶68,70,73.

On September 19, 2016, Defendant Cook convened a staff meeting and threatened the staff with discipline if anyone ever reported problems with the water or any other problem at school by speaking to anyone else besides her (including to public health agencies). One teacher conveyed a threat to Brown by saying, "Snitches gets stitches." Defendants did nothing to correct or discipline this teacher. Complaint ¶74.

On September 20, 2016, Plaintiff Brown reported DPSCD's illegal exposure of children to copper and lead to outside agencies, and copied this complaint to DPSCD officials. Complaint ¶75. On September 22, 2016, Brown was informed that she was being immediately and involuntarily transferred to Ronald Brown Academy. Complaint ¶76. This move sundered Brown's close relationships with her children and coworkers. Her new school was on the other side of the city and required a long commute, and at her new school Defendant Principal Georgina Tait

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR          9
RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT,
DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL
DISTRICT CLAIMS     -     CASE NO. 2:17-CV-12936-BAF-DRG

told Plaintiff Brown in a hostile manner in their initial meeting that "we don't do grievances here." Complaint ¶¶76-78.

In late September 2016, Plaintiff Brown got her blood tested. The test showed she had elevated and dangerous levels of copper in her blood. Complaint ¶79. To this day, despite Brown's demands, DPSCD has not provided free copper and lead screening to children at John R. King or at other DPSCD schools. Complaint ¶81.

Defendants' acts so demoralized Plaintiff and made her so ill that she had to take an extended medical leave beginning in October 2016 lasting through July 2017. Complaint ¶80.

On June 20, 2017, Plaintiff's Brown complaint to MIOSHA was successful: MIOSHA cited John R. King $4,000 for failing to provide safe drinking water and ordered it to correct its violations immediately.

On November 17, 2017, after a full adjudicatory hearing, Administrative Law Judge Julia C. Stern found that DPSCD had violated the Public Employment Relations Act (PERA) because it had unlawfully interfered with Plaintiff Brown's right to advocate for safe drinking water and had unlawfully interfered with the administration of a labor organization. (EXHIBIT A).

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT,
DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS CLAIMS      -      CASE NO. 2:17-CV-12936-BAF-DRG

10

**ARGUMENT**

This case is about the Defendants acting like the exposed, corrupt officials of Flint, Michigan by disregarding the health and safety of Detroit's children, knowingly exposing them and their families to poisoned water in their schools, lying to them about it, and retaliating against a teacher who had the courage and integrity to speak up and prevent this from happening.

Motions for reconsideration may be granted for "the necessity to correct a clear error of law or prevent manifest injustice." *DirecTV, Inc. v. Karpinsky*, 274 F.Supp.2d 918, 920 (E.D. Mich. 2003) (citation omitted) (emphasis added). Local Rule 7.1(h) governs motions to reconsider: the movant must "demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled… [and] show that correcting the defect will result in a different disposition of the case." L.R. 7.1(h).

This Court dismissed this case simply by concurring with Defendants' main points. However, the Defendants' Motions had wrongly applied the law. Due to health reasons described in the Declaration of Monica Smith, Plaintiff did not file an opposition within the time prescribed by the Local Rules. This Court, when it granted the Defendants' Motions to Dismiss (Dkt. No. 14), had not heard from Plaintiff. These arguments are made below.

**I.  When considering a motion to dismiss, the Court must construe the allegations in the light most favorable to Plaintiff and should liberally grant leave to amend so as to prevent injustice.**

The Court "must construe the complaint in the light most favorable to the plaintiff" and "accept all of the complaint's factual allegations as true." *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 467 (6th Cir. 2011).

Further, Federal Rule of Civil Procedure 15(a)(2) states that a "court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Motions to Dismiss and this Court's Order do not speak on whether the alleged defects of the Complaint could be corrected and survive a subsequent motion to dismiss. The Court's discretion to determine whether to allow this Plaintiff to preserve her lawsuit by amending her complaint "is limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987) (finding a lower court's failure to grant leave to a plaintiff to amend her complaint to be an "abuse of discretion") (citation omitted, emphasis added).

## II. Plaintiff states a valid First Amendment claim against the DPSCD Defendants.

As with all their dismissal arguments, the argument by Defendants DPSCD, Felicia Cook, and Ivan Branson ("the DPSCD Defendants") to dismiss Plaintiff's First Amendment claim wrongly treats this as merely a private dispute between employer and employee regarding regarding the employee's terms and conditions of employment. They pretend that the issue is not whether Plaintiff Brown has the right to speak on the public concern of Detroit children's right to safe drinking water.

The courts have articulated the proper standard for First Amendment claims:

> A First Amendment claim must plead factual allegations to establish that "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Fritz v. Charter Twp.*, 592 F.3d 718, 723 (6th Cir. 2010)

As to the first element, there is no doubt, and Defendant does not dispute, that Plaintiff spoke on an issue "public concern" when she fought for the children at J.R. King to have safe drinking water and later for them not to be poisoned by the school's water. As to the third element, there exist strong temporal proximities between Defendants' actions and Plaintiff's speech. For example, Plaintiff Brown

was informed that she might be transferred to another school on May 26, 2017, the same day she complained in person to Defendant Cook about the lack of drinking water in the school. She received a "minimally effective" rating from Cook the day after. Further, as was brought to light through discovery in the proceedings before MERC, Defendant Cook sent emails to other DPSCD administrators in the summer of 2016 in which she admitted that she considered Plaintiff's advocacy around clean drinking water to be an "attack[ on] her character [sic] and was undermining her position at the school" and therefore a reason to remove her from John R. King. EXHIBIT A at pp. 32-33.

### a. The DPSCD Defendants applied the wrong "adverse action" standard borrowed from Title VII cases; rather, employers violate the First Amendment if their acts would "deter a person of ordinary firmness."

Defendants' Motion only disputes whether the Plaintiff have met the second element of an "adverse action."

Defendants wrongly rely on *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652 (6th Cir. 1999), which applies the *different* standard from Title VII retaliation cases that requires a "materially adverse employment action." Id. at 661-62.[1] In Title VII

---

[1] Even when applying the "materially adverse employment action" standard, the *Hollins* court considered that threats might qualify as a "materially adverse

cases dealing with employer retaliation, the courts have struck a different balance between the interests of employers and employees who are advocating for themselves in what are more-or-less private disputes.

In *Hollins*, a black woman's employer adopted work regulations restricting how employees could style their hair. Hollins, a black woman, was repeatedly harassed by her supervisors over how she styled her hair. She made a complaint of racial discrimination with the Equal Employment Opportunity Commission (EEOC). After she made her complaint, her foreman threatened to discharge her, but did not actually do so. The First Amendment right to free speech was not at issue in Hollins because the courts have repeatedly ruled that speech regarding the terms and conditions of one's employment, such as the employer rules on how to style one's hair in *Hollins*, are generally not issues of "public concern."

In *Fritz*, the Sixth Circuit reaffirmed the longstanding principle that First Amendment retaliation cases do not require a "materially adverse employment action":

---

employment action." It declined to apply it because the plaintiff's foreman who made the threat did not have the authority to transfer or terminate and therefore could not carry out his threat. Id. at 662. In contrast, the Defendants in this case had the authority to transfer and/or terminate Brown, actually gave her a subpar rating that under statute is a step toward termination, misassigned her to teach fourth graders, and involuntarily transferred her to a different school on the other side of Detroit.

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR                    15
RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT,
DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL
DISTRICT CLAIMS      -      CASE NO. 2:17-CV-12936-BAF-DRG

The term 'adverse action' arose in the employment context and has traditionally referred to actions such as 'discharge, demotions, refusal to fire, nonrenewal of contracts, and failure to promote.' ... However, this Circuit has held that any action that would deter a person of ordinary firmness from exercising protected conduct will suffice, which may include harassment or publicizing facts damaging to a person's reputation."

*Id.* at 724 (citation omitted)

The First Amendment jealously protects the right to speak on issues of public concern, which moreover not only protects employees from retaliation by their employers but also private citizens from retaliation by the government.

In the present case, the public concerns that Plaintiff Brown spoke about were the public health emergency created by the DPSCD Defendants in denying drinking water to schoolchildren and later exposing them to poisoned water, and the DPSCD Defendants' efforts to lie to the public about it. For paramount public concerns such as this, the correct standard is whether an official's action "would deter a person of ordinary firmness."

Also informative, with facts extraordinarily similar to the present one, is *Ely v. Dearborn Heights School District No. 7*, 150 F.Supp.3d 842 (E.D. Mich. 2015) (affirmed in *Ely v. Dearborn Heights School District No. 7*, 655 Fed.Appx. 495 (6th Cir. 2016)), in which the District Court held that the Plaintiff, a custodian who contacted the Michigan Occupational Safety and Health Administration

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS    -    CASE NO. 2:17-CV-12936-BAF-DRG

16

(MIOSHA) to report a possible asbestos hazard at her school, could proceed on her First Amendment retaliation claim after receiving two disciplinary letters from her employer that threatened disciplinary action if she continued to speak about the asbestos danger:

> Typically, adverse action consists of termination from employment, but that did not happen here. Instead, the plaintiff premises her retaliation claim on the issuance of two letters of reprimand that were sent to her, and placed in her personnel file, which warned the plaintiff to stop spreading "false rumors" about the presence of asbestos in the defendants' school buildings. "In order to determine whether actions of lesser severity merit being deemed 'adverse' for purposes of a retaliation claim, [the Sixth Circuit has adopted] the standard suggested by Judge Posner in *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982), that an adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus–X v. Blatter*, 175 F.3d 378, 396 (6th Cir.1999). "'[S]ince there is no justification for harassing people for exercising their constitutional rights *[the effect on freedom of speech] need not be great in order to be actionable*.'" Id. at 397 (quoting Bart, 677 F.2d at 625). The plaintiff "need not show [that she was] actually deterred from exercising [her] right to free speech." *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir.2007). *"[A] credible threat to the nature and existence of one's ongoing employment is of a similar character to the other recognized forms of adverse action—termination, refusal to hire, etc." Fritz v. Charter Twp.*, 592 F.3d 718, 724, 728 (6th Cir.2010). "A chilling effect sufficient under this prong is not born of de minimis threats or inconsequential actions, but neither does the requisite showing permit *solely* egregious retaliatory acts to proceed past summary judgment." *Ctr. for Bio–Ethical Reform*, 477 F.3d at 822.

> *Id.* at 853 (emphasis added).

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS - CASE NO. 2:17-CV-12936-BAF-DRG

17

Therefore, the threats alone in *Ely*, in the absence of a materially adverse employment action, stated a First Amendment retaliation claim.

Therefore, threats alone, in the absence of termination or other material change in one's employment, qualify as "adverse action" under the First Amendment.

**b. The DPSCD Defendants' actions against Brown would deter a person of ordinary firmness.**

This Court must "accept all of the complaint's factual allegations as true," and those allegations must be "construe[d]... in the light most favorable to the plaintiff." *Ashland, Inc.*, 648 F.3d at 467.

The Complaint details a series of actions and their effects on Plaintiff Brown that conveyed a "credible threat to the nature and existence of [Brown's] ongoing employment" (*Ely*) and which would "deter a person of ordinary firmness":

- On May 26, 2017 (the day that Brown met with Defendant Cook to voice her complaint about the children not having water), Brown was informed that Defendant Cook sought her immediate transfer to another school. Complaint ¶48.
- On May 27, 2017, after Brown had received consistent ratings of "highly effective" in previous years, Cook gave Brown a subpar rating of "minimally effective" while violating DPSCD and her own previous practices for evaluating teachers. In DPSCD, three consecutive years of a "minimally effective" rating leads to termination. Complaint ¶¶49-50.
- Within an hour after contacting Cook's supervisor about Cook's unresponsiveness to her complaints, Brown received an email from

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT,
DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL
DISTRICT CLAIMS    -    CASE NO. 2:17-CV-12936-BAF-DRG

18

Defendant Vice Principal Branson stating "Your [sic] FIRED" and making false accusations about selling food to her students. Complaint ¶¶53-54.

- Brown made repeated efforts to get higher-ranking administrators to intervene in the water problem and in Cook's wrongful "minimally effective" evaluation, only to be met with complicity and silence. Complaint ¶¶55,60.

- On August 31, 2016, Defendant Branson brazenly challenged Plaintiff Brown's status as the duly-elected site representative for teachers at John R. King and canvassed teachers asking whether they voted for Brown, even though she had run unopposed for the position. After Branson met with Brown, Defendant Cook subsequently disciplined Plaintiff Brown for her behavior during this meeting in which her rights and authority had been wrongfully attacked. Complaint ¶69.

- In Fall 2016, for the first time in her nearly twenty years of teaching, Plaintiff Brown was inexplicably reassigned from teaching middle-school science to teaching elementary schoolers, even though the school had a shortage of teachers to teach science. Complaint ¶66.

- Days after Brown had contacted agencies about children and staff getting sick at John R. King, on September 19, 2016, Defendant Cook convened a staff meeting and threatened the staff with discipline if anyone ever reported problems with the water or any other problem at school by speaking to anyone else besides her (including public health agencies). One teacher conveyed a threat to Brown by saying, "Snitches gets stitches." Defendants did nothing to correct or discipline this teacher. Complaint ¶74.

- Two days after reporting DPSCD's illegal exposure of children to copper, on September 22, 2016, Brown was informed that she was being immediately and involuntariliy transferred to Ronald Brown Academy. Complaint ¶76. This move sundered Brown's close relationships with her children and coworkers. Her new school was on the other side of the city and required a long commute and at her new school Defendant Principal Georgina Tait told Plaintiff Brown in a hostile manner that "we don't do grievances here." Complaint ¶¶76-78.

These allegations more than meet the standard of "deter[ring] a person of ordinary firmness." Plaintiff had made a lifelong commitment to teaching. But the stress caused by the DPSCD Defendants' retaliation had a physical toll on Plaintiff

Brown. Brown had to quit teaching summer school in summer 2016 at the orders of her doctor due to high blood pressure. Complaint ¶59. The DPSCD Defendants' acts had so demoralized Plaintiff that in summer 2016 she had to quit teaching summer school because her doctor ordered her to do so due to high blood pressure, and in October 2016 she had to take an extended medical leave lasting through July 2017 because she was so ill. Complaint ¶¶59,80. To this day, the teachers who had elected Brown to be their site representative are fearful of advocating in the same manner as Brown had, for fear of retaliation.

### c. Under the doctrine of collateral estoppel, this Court to give preclusive effect to an Administrative Law Judge's finding that Defendant DPSCD unlawfully interfered with Plaintiff's speech.

Further, the doctrine of collateral estoppel binds this Court. The Supreme Court has held that, in claims arising under 42 U.S.C. §1983, a federal court must give the same preclusive effect to decisions of a state administrative law judge that the courts of Michigan would afford to such decisions. *University of Tennessee v. Elliott*, 478 U.S. 788, 798 (1986). Under Michigan law, "collateral estoppel applies when questions of fact essential to an earlier judgment have been actually litigated and determined by a valid and final judgment between the same parties or those in

privity with those parties." *Conn v. Board of Education*, 586 F.Supp. 2d 852, 862 (E.D. Mich. 2008), citing *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n. 3 (1988).[2]

On November 16, 2017, after a full trial that included 22 witnesses before Michigan Employment Relations Commission (MERC) Administrative Law Judge (ALJ) Julia C. Stern, the ALJ found that a series of acts by Defendants unlawfully interfered with Katrina Brown's right to engage in concerted activity:

> a. On or about May 26, 2016, offering teacher Katrina Brown, a teacher at J.R. King Elementary/Middle School, a transfer to another school under circumstances that implied that she would be subject to future adverse employment actions as a result of her activities protected by Section 9 [of the Public Employment Relations Act] if she did not accept the transfer.

> b. On or about August 31, 2016, giving Katrina Brown, a teacher at J.R. King Academy, a written warning for engaging in conduct protected by Section of PERA.

> c. On or about September 19, 2016, threatening teachers at J.R. King with discipline if they spoke to outside agencies or individuals outside the school regarding their concerns about the quality of the water at that school.

MERC Decision (EXHIBIT A) at 41-42.

The speech at issue at MERC is exactly the same speech at issue in this case: Brown's complaints about lack of water for the children, complaints about

---

[2] Furthermore, the Michigan Court of Appeals has twice held that a judgment issued by a Michigan court is deemed to have collateral estoppel or res judicata effect even if it has been appealed—unless and until it is reversed. *Conn*, 586 F.Supp. 2d at 863, citing *City of Troy v. Hershberger*, 27 Mich. App. 123 (1970) and *Temple v. Kelel Distrib. Co*, 183 Mich. App. 326 (1990).

retaliatory actions by District personnel, complaints to government agencies about the exposure of children to poisoned water, etc. Speech on these subjects is protected by both PERA and the First Amendment.

By definition, collateral estoppel is binding upon a defendant who was a party in the prior adjudication. *Howell v. Vito's Trucking & Excavating Co.*, 386 Mich. 37, 42-43 (1971). Therefore, there is no question that DPSCD is bound by the ALJ's findings that DPSCD took the above actions against Plaintiff because of her speech.

The individual Defendants in this case are also bound by the MERC judgment because "parties to the former judgment or their privies may take advantage of or be bound by it," *Id.* at 43 (emphasis added). In the context of collateral estoppel and res judicata, the Michigan courts have defined "privity" as follows: "Regarding private parties, a privy includes a person so identified with the interest of another that he represents the same legal right, such as a principal to an agent, a master to a servant, or an indemnitor to an indemnitee." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 12-13 (2003), citing *Viele v. DCMA*, 167 Mich. App. 571, 580, mod. 431 Mich. 898 (1988), on remand 211 Mich. App. 458 (1995).

Judged by this standards, Defendants Cook and Branson are in privity with DPSCD. Both the administrators for DPSCD and both are represented by DPSCD's Office of General Counsel. At MERC, there was an absolute identity of interests because any finding by MERC that either Cook or Branson participated in discriminating against Brown because of her speech would be attributed to DPSCD under the principle of respondeat superior. Moreover, Cook and Branson testified at the hearing before the MERC ALJ.

As the ALJ found, Cook and Branson committed acts that had a chilling effect on Brown's speech. Cook and Branson are therefore bound by the finding of the ALJ that they participated in retaliation against Brown because of the same speech acts at issue in this case.

MERC's findings, together with the sole reasoning for this Court's dismissal of Plaintiff's First Amendment claim being a misapplication of the "adverse action" standard as articulated above, present an instance of "manifest injustice" that merits granting this Motion for Reconsideration. *DirecTV, Inc., 274 F.Supp.2d* at 920.

**III.   Plaintiff states a valid Substantive Due Process claim against Defendant Duggan and the DPSCD Defendants for violation of bodily integrity.**

"The right to personal security and to bodily integrity bears an impressive constitutional pedigree." *Doe v. Claiborne County*, 103 F.3d 495, 506 (6th Cir. 1996). "It is well established that persons have a Fourteenth Amendment liberty interest in freedom from bodily injury." *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987).

The Due Process bodily integrity claim made by plaintiffs from Flint, Michigan about their poisoned water was acknowledged and upheld by the Sixth Circuit as not being preempted by the Safe Drinking Water Act. See *Boler v. Earley*, 865 F.3d 391, 408, n. 4 (6th Cir. 2017) (not precluding that poisoned drinking water can provide the basis for a substantive due process claim: "[T]o show that the state-created danger doctrine or a person's fundamental right to bodily integrity have been violated, a Plaintiff does not need to establish any constitutional significance to the means by which the harm occurs—in this case, unsafe drinking water.")

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS    -    CASE NO. 2:17-CV-12936-BAF-DRG

24

### a. Defendants misstate the test for a substantive due process violation: the issue is whether the exposure of Plaintiff and other staff and children to poisoned water and the attempts to silence Plaintiff to cover up that policy "shock the conscience."

The Defendants misrepresent Plaintiff's substantive due process claim as imposing an affirmative duty on employers to provide safe drinking water. (Dkt. No. 13, at 15) As the Defendants do throughout their Motions to Dismiss, they misstate Plaintiff's actual claims and ignore the issue of poisoned water. The Sixth Circuit rejected this strawman of an affirmative duty in regard to the Flint water cases[3]—the actual issue Flint, as here, is whether a government official violates substantive due process when he or she creates a danger and affirmatively exposes others to that danger by lying about the danger. The DPSCD Defendants went further and committed acts to silence Plaintiff pursuant to implementing these unlawful policies.

---

[3] The Sixth Circuit stated: "The Defendants also argue that the Plaintiffs' claims rest on a constitutional right to safe drinking water, which no courts have found to be a fundamental right. But the Plaintiffs explicitly deny that they seek to enforce such a right, or that their claims must rest on such a right. This argument appears principally to concern the Plaintiffs' substantive due process claims. But to show that the state-created danger doctrine or a person's fundamental right to bodily integrity have been violated, a Plaintiff does not need to establish any constitutional significance to the means by which the harm occurs—in this case, unsafe drinking water." *Boler*, 865 F.3d at 408, n. 4.)

In the same vein, the DPSCD Defendants cite to cases where that dealt with an employer alleged to violate the substantive due process clause for not maintaining a minimum level of safety by training its employees and warning them about dangers in the workplace—not cases where the defendants (as here) affirmatively created a danger, exposed Plaintiff to it, lied about its existence, and tried to silence her pursuing to carrying this out.

The correct standard for finding the DPSCD Defendants liable for violating Plaintiff's substantive due process right to bodily integrity is that of *deliberate indifference*, which requires that "the defendants knew of and disregarded a substantial risk of serious harm to [plaintiff's] health and safety." *Watkins v. City of Battle Creek*,  273 F.3d 682, 685 (6th Cir. 2001).

"The cognizable level of executive abuse of power [is] that which shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The Motion to Dismiss wrongly argues that there is a requirement of "intent" to injure or punish someone that is to be mechanically applied to all substantive due process cases.[4] This is wrong. The Supreme Court has held that the acts must not be

---

[4] The DPSCD Defendants misrepresent their authority. *Upsher v. Grosse Pointe Public School System*, 285 F.3d 448 (2002), also explicitly states that *in addition to* finding "intent to injure," an alternate way to prove a substantive due process violation is to prove "'conscious shocking' behavior." *Id.* at 453.

viewed in isolation, and the surrounding context must be considered. The United States Supreme Court held:

> Rules of due process are not... subject to mechanical application in unfamiliar territory. *Deliberate indifference that shocks in one environment may not be so patently egregious in another*, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking.

> *County of Sacramento v. Lewis*, 523 U.S. at 850 (emphasis added).

Accordingly, the Supreme Court ruled in *Lewis* that the required mental state to find whether a police officer involved in a high-speed chase violated a person's substantive due process right to bodily integrity must be something more than deliberate indifference because officers in such situations "are supposed to act decisively and to show restraint in the same moment, and their decisions have to be made 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id*. at 853. This is in contrast to situations where violations of bodily integrity are brought about by officials who have the luxury of time to weigh the wisdom of their actions and their consequences upon others. For such individuals for whom "actual deliberation is practical," *id.* at 851, the appropriate standard is one of deliberate indifference toward the plaintiff's rights.

**b. The Defendants' acts "shock the conscience" because they acted with deliberate indifference, by knowingly exposing Plaintiff and the children and staff at John R. King to poisoned water and by seeking to silence Plaintiff to carry out this policy.**

The Complaint states facts that show deliberate indifference toward Plaintiff Brown's right to bodily integrity. The Defendants acted in a similar fashion as the officials in Flint—in possession of information that there existed dangerous levels of contaminants, they covered up this fact (at John R. King, disingenuously replacing the white water fixtures with silver ones, making false statements to the public, issuing phony "certificates of compliance"), and knowingly exposing large numbers of people to this danger. Complaint ¶¶36, 62-63. The Defendants in this case are further distinguished by the fact that they retaliated against Plaintiff in an effort to cover up this policy.

Defendants argue in their Motions to Dismiss by claiming that they had no personal involvement and/or violation of Plaintiff's rights. This is false.

**Defendants Cook and Branson** were deliberately indifferent in early Fall 2016, when the water was turned back on under their authority. They were responsible for knowing whether remedial action had been taken to fix the problem. They continued to take action against Brown in August-September 2016

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS    -    CASE NO. 2:17-CV-12936-BAF-DRG

28

because they knew she would hold them and other DPSCD administrators accountable regarding the poisoned water: Branson and Cook tried to remove Brown as site representative, Branson canvassed teachers challenging Cook's position as site representative, and Cook served Brown with a disciplinary letter in retaliation for her effort to defend the integrity of the union election. These actions in August-September 2016 fostered an environment of hostility and retaliation against Brown to send a message to all teachers and staff that advocating for the safety of staff and children would not be tolerated.

**Defendant Mayor Mike Duggan** claims that he should be dismissed because he had no formal authority over DPSCD.[5] But, just as was the case in Flint, the coverup of contaminated water spanned multiple government agencies. Duggan was deliberately indifferent when he represented to Plaintiff and other Detroiters that all the schools were "safe" on August 29, 2016, when in fact John R. King and other schools still had poisoned water. It is telling that Duggan's Motion to Dismiss does not address the content and consequences of his own press release.

---

[5] Duggan also makes a claim of absolute immunity in his Motion to Dismiss. However, this only immunizes him from state tort claims, which an action made under 42 U.S.C. §1983 is not.

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR                    29
RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT,
DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL
DISTRICT CLAIMS     -     CASE NO. 2:17-CV-12936-BAF-DRG

On August 29, 2016, Duggan's office released the following press release with the following statements to induce Detroiters to enroll in DPSCD and to drink the water:

> Over the past eight months, the Detroit Public Schools Community District (DPSCD) has worked closely with City health and safety inspectors to bring its schools up to code. *DPSCD has spent $2.5 million on repairs so far. Today, all but eight of its 94 school buildings are in full compliance with city health and safety codes.* The remaining 8 will be brought up to code this fall following extensive roof and other repairs.
>
> *All building and health inspection reports and certificates of compliance (when applicable) for each DPSCD school are posted on the City of Detroit website at www.detroitmi.gov.*
>
> "Parents should be able to send their children to school without worrying that their health and safety could be at risk. Detroit's families deserve no less," Mayor Mike Duggan said. "I'd like to thank the leadership and facilities staff at DPSCD *for making these repairs* their highest priority over the past eight months and we will continue to work together to ensure our school buildings are up to code."
>
> EXHIBIT B (August 29, 2016 Duggan press release)

The hyperlink directed people to a fraudulent "Certificate of Compliance" for John R. King that had been issued by Detroit's Buildings, Safety Engineering, & Environmental Department, a division of the City of Detroit and not of DPSCD (EXHIBIT C).

Furthermore, the press release included claims about the water being clean, deliberately not including any information about schools like John R. King which

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS    -    CASE NO. 2:17-CV-12936-BAF-DRG

30

had dangerous *copper* levels in their water. This induced Plaintiff and other staff and children at John R. King to trust that the water at John R. King was drinkable:

Water in Schools meet lead safety standards

During the summer, water at all DPS schools was tested for the presence of lead, thanks to a generous donation from the Children's Hospital of Michigan Foundation. Those tests showed that all but 24 schools tested below the EPA threshold for the presence of lead in water. At schools where lead levels were elevated, DPS staff worked with the Detroit Health Department to identify ways to lower the lead levels below EPA standards, including:

- Regularly flushing the pipes (running the water) after weekends and school breaks
- Isolating/removing water outlets with elevated levels
- Developing a plumbing profile of the school (marking where samples were taken on a floor plan of the school) to identify places where pipes within the building may need replacing
- Retesting the water after making corrections Each of the 24 schools had submitted a remediation plan to the health department to ensure that lead levels remain safe.

From EXHIBIT B (Duggan press release)

Relying upon the above false and knowingly deceptive representations, Plaintiff and other staff and the children at John R. King drank the water in early Fall 2016 that caused them to be sick and exposed to harmful long-term effects.

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR                    31
RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT,
DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS CLAIMS      -      CASE NO. 2:17-CV-12936-BAF-DRG

### c. The Defendants are not entitled to qualified immunity for their actions.

Even where a government official violates a constitutional right, that official benefits from qualified immunity if that right was not "clearly established" at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The violation of Plaintiff's substantive due process of bodily integrity is established above, where Defendants acted with deliberate indifference toward her rights. Further, this right has long been established: "The right to personal security and to bodily integrity bears an impressive constitutional pedigree." *Doe v. Claiborne County*, 103 F.3d 495, 506 (6th Cir. 1996).

### IV. This Court cannot conclude that denying children access to safe, drinking water, exposing Plaintiff, other staff, and children to poisoned water, and intimidating and retaliating against Plaintiff for defending herself and the children is as a matter of law "not outrageous" - Plaintiff states a valid claim of intentional infliction of emotional distress.

A plaintiff states a claim of intentional infliction of emotional distress (IIED), when one's allegations describe "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Lewis v.*

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS   -   CASE NO. 2:17-CV-12936-BAF-DRG

32

*LeGrow*, 258 Mich.App. 175, 196 (2003). In sum, "[l]iability attaches only when a plaintiff can demonstrate that the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*.

Here again, as with the other causes of action, the DPSCD Defendants pretend that this case is merely about disagreements and personal conflicts within a workplace outside the context of depriving children of water and later exposing them to poisoned water.

In their Motion to Dismiss, the DPSCD Defendants ask this Court to find as a matter of law that denying safe drinking water to children; inducing Plaintiff, other staff, and children to drink poisonous water by lying to them; and bullying and taking adverse action against Plaintiff because she tried to protect staff and children from these actions is not "extreme and outrageous" and is not "utterly intolerable in a civilized community." *Id*. The legal test for IIED asks this Court to make a judgment as to what the community believes exceeds the bounds of decency.

The most harmful and significant crimes are public ones, in which many people are made to suffer, and they often are not due to impassioned or violent

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT,
DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS CLAIMS      -      CASE NO. 2:17-CV-12936-BAF-DRG

33

lapses in temper, but by the cool calculation of people in positions of power who place their self-interest and greed above the welfare of others. The acts by Defendants Cook and Branson against Plaintiff are even more outrageous because they cared more about driving Plaintiff out of John R. King than about the welfare of the children they and Plaintiff were supposed to protect from harm.

The DPSCD Defendants' cases were in regard to a defendant motion for summary judgment (*Mino*) and a defendant motion for judgment notwithstanding the verdict (*Seyfried*). In those cases, the plaintiffs' claims had not been dismissed at the pleading stage, which only underscores that IIED claims require a fact-based determination of what is "outrageous" and should not be dismissed.

Nor do the facts in the DPSCD Defendants' cases shed light about what is "extreme and outrageous." In *Mino v. Clio School Dist.*, 255 Mich.App.60, 64-67 (2003), an ousted superintendent brought an IIED claim against employees of his former school district, who told other school districts that considered hiring him that he had abandoned of duties, treated staff in a hostile manner, and engaged in sexual improprieties at his former school district. *Id.* at 64-66. The trial court had found that those statements were made in good faith. (The Court affirmed the summary disposition of the plaintiff's defamation claim. *Id.* at 73. In contrast, the Defendants in this case acted in bad faith and in retaliation against Plaintiff, rating

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS  -  CASE NO. 2:17-CV-12936-BAF-DRG

34

her as a subpar teacher in retaliation for protecting the children at John R. King, taking a series of adverse actions over several months against Plaintiff, threatening other staff so as to foster an environment so hostile that a fellow staff member could make an open threat ("snitches get stitches") against Plaintiff without repercussions, and finally humiliating her and severing her ties with John R. King via an involuntary transfer.

The unpublished opinion DPSCD Defendants rely on, *Seyfried v. UAW Local 1292*, No. 242566, 2004 WL 435379 (Mich. Ct. App. March 9, 2004), involved aggressive actions from a coworker who hollered at the plaintiff and had an angry outburst at the plaintiff, but had no power to hire or fire the plaintiff (which also did not exist in Mino). It is actions such as those that the DPSCD Defendants may characterize as "mere insults, indignities, threat, annoyances, petty oppressions, or other trivialities"; it is another thing entirely for Defendant supervisors Cook and Branson to abuse their power to downgrade the Plaintiff's teaching rating, threaten her with transfer, challenge her undisputed office as her union's site representative, and through veiled and open threats foster a hostile environment to bully and drive Plaintiff out of her school and then out of teaching in the District altogether.

Defendants' decision to prioritize the image of the District over the health of children is relevant to whether their conduct was "outrageous," and the courts have no business in deciding in lieu of the citizens of Michigan that a Flint-style coverup and poisoning of children is not "outrageous."

Further, the stress of Defendants' retaliation had a physical toll on Plaintiff Brown. Brown had to quit teaching summer school in summer 2016 at the orders of her doctor due to high blood pressure. Complaint ¶59. Defendants' acts so demoralized Plaintiff and made her so ill that she had to take an extended medical leave beginning in October 2016 lasting through July 2017. Complaint ¶80.

## CONCLUSION

Motions for reconsideration may be granted for "the necessity to correct a clear error of law or prevent manifest injustice." *DirecTV, Inc. v. Karpinsky*, 274 F.Supp.2d 918, 920 (E.D. Mich. 2003) (citation omitted) (emphasis added).

On the basis of the argument set forth above, this Court should reconsider its November 27, 2017 Order and reverse its dismissal of Plaintiff's First Amendment, Substantive Due Process, and Intentional Infliction of Emotional Distress claims.

By Plaintiff's Attorneys,
UNITED FOR EQUALITY AND AFFIRMATIVE
ACTION LEGAL DEFENSE FUND (UEAALDF)

BY:  /s/ Monica Smith_____
19526-B Cranbrook Drive
Detroit, MI 48221
(313) 585-3637
Dated: December 11, 2017

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
RECONSIDERATION OF DISMISSAL OF FIRST AMENDMENT,
DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS CLAIMS     -     CASE NO. 2:17-CV-12936-BAF-DRG

37

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Attorneys for Detroit Public Schools Community District, Felicia Cook, and Ivan Branson:

**Jenice C. Mitchell Ford**
Detroit Public Schools Community District
Office of General Counsel
3011 W. Grand Blvd.
Suite 1002
Detroit, MI 48202
313-873-4528
Fax: 313-873-4564

**Phyllis L. Hurks-Hill**
Detroit Public Schools
3011 W. Grand Boulevard
Suite 1800
Detroit, MI 48202
313-873-4528
Fax: 313-873-4564

**Rebecca Shaw Hicks**
Detroit Public Schools
Fisher Building; 18th Floor
3011 West Grand Boulevard
Suite 1002
Detroit, MI 48202-2710
313-873-4538
Fax: 313-873-4564
Email: Rebecca.Hicks@detroitk12.org

**Theophilus E. Clemons**
Detroit Public Schools District
Office of the General Counsel
3011 West Grand Blvd
Suite 1002
Fisher Building
Detroit, MI 48202
313-873-4527
Fax: 313-748-6135
Email: theophilus.clemons@detroitk12.org

Attorney for Mike Duggan:

**Veronica R. Ibrahim**
2 Woodward Avenue, Suite 500
Detroit, MI 48226
313-237-6667
Email: ibrahimv@detroitmi.gov

 /s/ Monica Smith_____
UNITED FOR EQUALITY AND AFFIRMATIVE
ACTION LEGAL DEFENSE FUND (UEAALDF)
19526-B Cranbrook Drive
Detroit, MI 48221
(313) 585-3637
Bar No. P73439